IN THE SUPREME COURT OF NORTH CAROLINA

No. 70A19

Filed 16 August 2019

IN THE MATTER OF E.H.P. and K.L.P.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 14 January 2019 by Judge Monica Leslie in District Court, Graham County. This matter was calendared for argument in the Supreme Court on 1 August 2019 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*Wendy C. Sotolongo, Parent Defender, by Annick Lenoir-Peek, Deputy Parent Defender, for respondent-appellant father.*

DAVIS, Justice.

This case involves a termination of parental rights proceeding initiated by petitioner-mother (petitioner) against respondent-father (respondent). In this appeal, we consider whether the trial court erred by terminating respondent's parental rights based upon the grounds of willful abandonment and willful failure to pay child support. Because we conclude that sufficient evidence existed to support the termination of respondent's parental rights on the basis of willful abandonment and that the trial court did not abuse its discretion in determining that termination of

respondent's parental rights would be in the children's best interests, we affirm the trial court's orders.

## Factual and Procedural Background

Petitioner and respondent were married in 2007 and had two daughters together. Kelly and Emily (the children) were born in 2006 and 2009, respectively.[1] The parties separated in 2012.

In August 2013, petitioner filed a motion for temporary emergency custody of the children. In the Temporary Custody Judgment entered in District Court, Graham County on 17 December 2013, petitioner was awarded sole temporary custody of the children "until such time as this matter is resolved by the Court through a permanent custody hearing." The Temporary Custody Judgment contained the following pertinent findings of fact:

> 5.    [Respondent] did not appear for the hearing of this matter and has never filed any form of responsive pleading, motion, or other such documentation in response to [petitioner's] Complaint.
>
> 6.    The Court takes Judicial notice . . . that the [respondent] was in fact validly served and provided Notice of this hearing by the Sheriff of Loudon County, Tennessee, where [respondent] had been incarcerated.
>
> . . . .
>
> 9.    Throughout the relationship of the parties, the

---

[1] Pseudonyms are used throughout this opinion to protect the identities of the minor children.

[respondent] committed numerous acts of domestic violence against the [petitioner].

10. The parties separated on July 23, 2012 due to the [respondent's] drug addiction and a series of acts of domestic violence by the [respondent] . . . against the [petitioner] wherein the [respondent] choked the [petitioner] and hit her in the face with his elbow causing bruising and a laceration to the person of the [petitioner].

11. The minor children of the parties were present while the [respondent] engaged in the acts of violence against the [petitioner].

. . . .

14. The [respondent] is addicted to methamphetamine and currently has charges pending against him in the State of North Carolina and Tennessee for larceny, assault on a female by strangulation, and drug related charges.

The Temporary Custody Judgment further provided that respondent "shall have no contact with the minor children until allowed such by further Order of this Court." Respondent never filed any motions seeking to alter the custody arrangement set forth in the Temporary Custody Judgment.

On 25 June 2018, petitioner filed petitions seeking to terminate respondent's parental rights to both children on the grounds of willful failure to pay child support and willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(4) and (7), respectively. Petitioner alleged that respondent had willfully failed to pay child support for a continuous period of six months immediately preceding the filing of the petitions. She

further alleged that respondent had neither attempted to see or communicate with the children during the six years preceding the filing of the petitions nor sent the children any cards or presents during that time period.

Respondent was served with the petitions at the Sampson County Correctional Institution in Clinton, North Carolina, where he had been incarcerated since January 2018 and was serving an eight-month sentence for violating his probation. On 17 July 2018, he filed answers to the petitions in which he denied that grounds existed to terminate his parental rights.

A hearing was held on the petitions to terminate respondent's parental rights in District Court, Graham County on 17 October 2018 before the Honorable Monica Leslie. At the hearing, the trial court received testimony from petitioner, respondent, the children's stepfather, the guardian *ad litem* for each child, and respondent's brother.

At the conclusion of the hearing, the trial court informed the parties that it was terminating respondent's parental rights to both children on the ground of willful abandonment. The court stated as follows with regard to the ground of willful failure to pay child support:

> [T]here was not a child support order introduced as evidence nor was there any payment schedule or any evidence of when payments were made that were introduced to the Court, and the Court isn't able to determine what, if any, payments have or have not been made within the past six months . . . prior to the filing of the petition.

. . . .

> Based on the high standard of proof and the lack of
> evidence about either an order or what payments have
> been made, the Court does not find by clear, cogent, and
> convincing evidence the nonsupport ground. However, the
> Court, having found one ground for termination of parental
> rights, will move on to the dispositional phase of the
> proceeding.

On 14 January 2019, the trial court entered adjudication and disposition orders as to each juvenile terminating respondent's parental rights. However, contrary to the statements made by the court at the 17 October hearing in announcing its ruling, the court's written orders stated that sufficient evidence existed to support termination based upon both grounds alleged in the petitions. Respondent gave timely notice of appeal to this Court pursuant to N.C.G.S. § 7B-1001(a1)(1).[2]

**Analysis**

On appeal, respondent argues that the trial court erred by both finding that grounds existed to terminate his parental rights to the children and concluding that the termination of his parental rights was in the children's best interests. We disagree.

Our Juvenile Code sets forth a two-step process for the termination of parental

---

[2] Effective 1 January 2019, appeals taken from orders granting or denying a motion or petition to terminate parental rights lie directly with this Court. *See* N.C.G.S. § 7B-1001(a1)(1) (2017).

rights. At the adjudication stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence that grounds exist for termination pursuant to section 7B-1111 of the General Statutes. N.C.G.S. § 7B-1109(e) (2017). If the trial court finds that grounds exist for termination, it then proceeds to the dispositional stage at which it must "determine whether terminating the parent's rights is in the juvenile's best interest" based on the following factors:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* § 7B-1110(a) (2017).

We review a trial court's adjudication under N.C.G.S. § 7B-1111 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). The trial court's assessment of a juvenile's best interests at the dispositional

stage is reviewed for abuse of discretion. *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re L.M.T.,* 367 N.C. 165, 171, 752 S.E.2d 453, 457 (2013)).

## I.   Adjudicatory Phase

Here, the trial court determined that two grounds existed to terminate respondent's parental rights: willful failure to pay child support pursuant to N.C.G.S. § 7B-1111(a)(4) and willful abandonment under N.C.G.S. § 7B-1111(a)(7). "If either of the [two] grounds aforesaid is supported by findings of fact based on clear, cogent and convincing evidence, the order[s] appealed from should be affirmed." *In re Moore*, 306 N.C. at 404, 293 S.E.2d at 133; *see also* N.C.G.S. § 7B-1111(a) (2017) ("The court may terminate the parental rights upon a finding of one or more [grounds for termination.]").

We first address the trial court's ruling that grounds existed to terminate respondent's parental rights based upon willful abandonment. Termination pursuant to this ground requires proof that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S § 7B-1111(a)(7) (2017). We have held that "[a]bandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997) (quoting *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986)); *see also Pratt v. Bishop*, 257 N.C. 486, 502, 126 S.E.2d 597, 608 (1962) ("Abandonment requires a wilful intent to escape parental

responsibility and conduct in effectuation of such intent."). "It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Id.* at 501, 126 S.E.2d at 608.

In its 14 January 2019 orders, the trial court took judicial notice of the Temporary Custody Judgment. Both 14 January adjudication orders also contained the following pertinent findings of fact:

> 4. That within the [Temporary Custody] Order, the Court ordered that the Respondent was to have no contact with the minor children until allowed such by further Order of the Court. That the Respondent never filed a Motion asking for contact with the minor children.
>
> 5. Respondent Father states that he tried to provide some gifts for the minor children for 3 years after the separation, but the Petitioner did not accept the gifts so Respondent stopped trying.
>
> 6. That Respondent ha[d] no substance abuse issue for the past year, but has struggled throughout the minor children's life with substance abuse.
>
> . . . .
>
> 9. . . . That the Respondent has not made a regular child support payment for more than year [sic] or preceding the filing of this petition.
>
> . . . .
>
> 11. That Respondent acknowledged that he was not at a good point in his life as to why he has not tried to

contact the children or filed anything with the Court.

Based upon these findings of fact, the trial court concluded that sufficient grounds existed to terminate respondent's parental rights to both children pursuant to N.C.G.S. § 7B-1111(a)(7).

Respondent concedes that he had no contact with the children from 25 December 2017 to 25 June 2018—the relevant six-month period for purposes of N.C.G.S. § 7B-1111(a)(7). *See In re Young*, 346 N.C. at 251, 485 S.E.2d at 617 ("[S]ince the petition for terminating respondent's parental rights was filed on 6 May 1994, respondent's behavior between 6 November 1993 and 6 May 1994 is determinative" for purposes of an abandonment determination.). He contends, nevertheless, that the trial court erred by determining he willfully abandoned the children because he was forbidden to contact them under the provisions of the Temporary Custody Judgment.

We are satisfied that sufficient evidence supported the trial court's determination that respondent willfully abandoned his children pursuant to N.C.G.S. § 7B-1111(a)(7). By his own admission, respondent had no contact with his children during the statutorily prescribed time period. In addition, he made no effort to have any form of involvement with the children for several consecutive years following the entry of the Temporary Custody Judgment. While respondent ascribes this inaction to the no-contact provision contained in the Temporary Custody Judgment, this argument is unavailing. A temporary custody order is by definition provisional, and the order at issue here expressly contemplated the possibility that the no-contact

provision would be modified in a future order. No attempt was made by respondent, however, to alter the terms of the Temporary Custody Judgment so as to allow contact between him and the children.

Similarly, the fact that respondent was incarcerated for almost the entirety of the six-month period preceding the filing of the termination petition does not preclude a finding of willful abandonment under N.C.G.S. § 7B-1111(a)(7). *See In re M.A.W.*, 370 N.C. 149, 153, 804 S.E.2d 513, 517 (2017) ("Our precedents are quite clear—and remain in full force—that '[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision.' " (alteration in original) (quoting *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006)). Indeed, the record reveals that respondent was aware during his incarceration of his ability to seek relief from the trial court's orders. Respondent testified that he filed a motion while he was incarcerated asking the trial court to suspend his child support obligations. When asked by petitioner's counsel why he never filed a similar motion seeking a custody modification or visitation rights with his children, he stated that he "wasn't in a place in [his] life to -- to really be a father or a parent."

Thus, we conclude that respondent's conduct meets the statutory standard for willful abandonment and affirm the trial court's adjudication pursuant to N.C.G.S. § 7B-1111(a)(7). As previously noted, an adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights. *See In re Moore*,

306 N.C. at 404, 293 S.E.2d at 133; *see also* N.C.G.S. § 7B-1110(a). Therefore, we need not address respondent's contention that the trial court erred in determining that grounds likewise existed to support termination based on willful failure to pay child support. *See In re P.L.P.*, 173 N.C. App. at 8, 618 S.E.2d at 246 ("[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and 'an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds.' " (quoting *In re Clark*, 159 N.C. App. 75, 78 n.3, 582 S.E.2d 657, 659 n.3 (2003))).

## II.  Dispositional Phase

Respondent's final argument is that the trial court erred by concluding the termination of his parental rights is in the children's best interests. He asserts that he is "now able to meet his legal and financial obligations" and contends that in the event his parental rights are terminated and the children are not adopted by their stepfather "they will lose any benefits they could have received from [respondent]." Once again, we disagree.

Prior to the 17 October 2018 termination hearing, the guardian *ad litem* appointed for each child submitted written reports to the court recommending that respondent's parental rights be terminated. At the hearing, the trial court heard testimony from the children's stepfather, who attested to his love for the children and his desire to adopt them.

In its termination orders, the trial court made detailed findings of fact addressing the dispositional criteria set forth in N.C.G.S. § 7B-1110(a). Specifically, the court found "there is a strong likelihood that the children will be adopted by their step[-]father" if respondent's parental rights are terminated; that the children have "no bond" with respondent and are "extremely bonded with the Petitioner and their step[-]father"; and that the children have all of their "medical, physical and emotional needs . . . met" in their current environment.

The trial court also made findings that "Respondent's home is extremely unstable" and that his conduct "has been such as to demonstrate that he would not promote the healthy and orderly physical and emotional wellbeing of the [children]." Respondent has not challenged any of these findings, and they are therefore binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citing *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962)). Thus, we are satisfied that the trial court's findings reflect due consideration of the dispositional factors in N.C.G.S. § 7B-1110(a) and constitute a valid exercise of its discretion in determining that the termination of respondent's parental rights is in the best interests of the children.

**Conclusion**

For the reasons set out above, we affirm the 14 January 2019 orders of the trial court terminating respondent's parental rights.

AFFIRMED.