IN THE SUPREME COURT OF NORTH CAROLINA

No. 389A19

Filed 17 July 2020

IN THE MATTER OF: K.R.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 6 May 2019 by Judge Paul A. Hardison in District Court, Pitt County. This matter was calendared in the Supreme Court on 19 June 2020 and determined without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Miller & Audino, LLP, by Jay Anthony Audino, for petitioner-appellant mother.*

*Matthew D. Wunsche, GAL Appellate Counsel, for appellee Guardian ad Litem.*

*W. Gregory Duke for respondent-appellee father.*

MORGAN, Justice.

Petitioner, the mother of the minor child K.R.C. (Katie)[1], appeals from the trial court's order denying her petition to terminate the parental rights of respondent, Katie's biological father. Because the trial court failed to make sufficient findings of fact and conclusions of law to allow for meaningful appellate review, we vacate the trial court's order and remand for further proceedings.

---

[1] A pseudonym chosen by the parties.

*Factual Background and Procedural History*

Katie was born in April 2014. Petitioner mother and respondent father were not married to each other, and after Katie's birth, the child resided with petitioner in Pitt County. Soon after Katie was born, the District Court, Pitt County, entered a temporary custody order granting sole custody of Katie to petitioner due to respondent's mental health issues—respondent was hospitalized for three days with suicidal ideations in late January 2014—and his threatening conduct. Petitioner obtained an *ex parte* domestic violence protective order (DVPO) against respondent on 13 June 2014. On 12 July 2014, respondent was charged with assault on a female, interference with emergency communications, and second-degree trespass after he went to petitioner's residence, took petitioner's telephone from her when she tried to call 911 for help, and choked petitioner when she refused to allow him to see Katie.

During the summer of 2014, Katie was the subject of a series of child protective services (CPS) reports received by the Pitt and Beaufort County Departments of Social Services (DSS). The report received on 16 June 2014 alleged that respondent was experiencing suicidal thoughts again and had made indirect threats, such as advising petitioner to take out a life insurance policy on Katie. On 12 July 2014, a report alleged that petitioner had been contacting respondent and asking to see him, and that Katie had been severely sunburned during a beach trip with petitioner. It was further reported on 18 August 2014 that petitioner was unstable and possibly suffering from post-partum depression, and that petitioner's stepmother had mental

health issues. Respondent later acknowledged that he had made the latter two of these CPS reports.

Due to petitioner's employment with Pitt County DSS, the CPS reports were investigated by Lenoir County DSS, which arranged for Beaufort County DSS (BCDSS) to provide services to the family. On 12 September 2014, petitioner contacted BCDSS and admitted to having ongoing contact with respondent. Petitioner acknowledged that she had allowed respondent to spend the night in her residence with Katie present on at least two occasions, had sexual relations with respondent while Katie was in the home on two other occasions, and had otherwise allowed respondent to visit with Katie.

Following these disclosures from petitioner, Katie was placed in kinship care with the child's maternal grandparents. Respondent objected to the placement, however, and threatened to remove Katie from the grandparents' home. On 15 September 2014, BCDSS obtained nonsecure custody of Katie and filed a juvenile petition alleging that Katie was a neglected juvenile.

Respondent submitted to a psychological evaluation by Dr. Anne L. Mauldin. In her report issued in November 2014, Dr. Mauldin noted that respondent was under a psychiatrist's care for attention-deficit/hyperactivity disorder (ADHD) and mood disorder related to his hospitalization. Based on her examination of respondent, Dr. Mauldin found "a high degree of fit with the diagnostic criteria for ADHD as well as Cluster B personality disorders, specifically Antisocial personality disorder and

Borderline personality disorder." She described these personality disorders as characterized by "intense, shifting moods and . . . problems with impulse control" as well as rigid but shifting attitudes about other people and "problems maintaining relationships." Because of the negative implications of these diagnoses for parenting, Dr. Mauldin deemed it "critical that [respondent] . . . be under the care of a psychiatrist and be in treatment with a skilled psychotherapist . . . who utilizes Dialectical Behavioral Therapy (DBT.)"

The trial court adjudicated Katie to be a neglected juvenile on 3 December 2014, finding that she lived in an environment injurious to her welfare "in light of the substantial amount of domestic violence, aggression, and mental issues displayed by [respondent.]" *See* N.C.G.S. § 7B-101(15) (2019). Although petitioner "ha[d] not actively done anything to injure [Katie]," the trial court found that petitioner had "continued to allow [respondent] to have access to the child in spite of seeking criminal charges, a [DVPO,] and a temporary custody order to prevent him from having such access."

The trial court entered its initial disposition order on 31 December 2014, maintaining Katie in the legal custody of BCDSS and authorizing her continued placement with her maternal grandparents. Although BCDSS had developed out-of-home family services agreements (OHFSA) for both parents, the trial court found as a fact that respondent had not signed his OHFSA and had "informed BCDSS that he is not going to complete services in order to work a plan of reunification." As a result,

the trial court ceased reunification efforts toward respondent and established a permanent plan for Katie of reunification with petitioner. To achieve reunification, petitioner was ordered to comply with the conditions of her OHFSA.

The trial court ordered that respondent comply with the requirements of his OHFSA, which included anger management treatment and DBT. The trial court also ordered respondent to abstain from using marijuana and from posting material on social media about the case. Although respondent was attending supervised visitations with Katie and behaving appropriately toward his daughter during those visits, the trial court found that his ongoing hostility and aggression toward BCDSS staff required the relocation of his visits to the Family Violence Center (FVC) in Greenville. The trial court granted respondent two hours of biweekly supervised visitation with Katie but required him to contact the FVC to arrange the visits.

An initial permanency planning hearing was conducted by the trial court on 6 March 2015. That court entered an order on 24 March 2015 awarding petitioner sole legal and physical custody of Katie in fulfillment of the permanent plan. The trial court made findings that respondent had not visited Katie since the time that respondent's visits were moved to FVC, that respondent had "done nothing to eliminate the safety risks that led to this juvenile coming into care," that respondent was "unfit to raise a minor child or to be in the presence of a minor child unsupervised," and that respondent had mental health issues "prevent[ing] him from appreciating the risks he poses[] to a minor child." Based upon these findings,

respondent was ordered by the trial court to have no further visitation with Katie. The order also forbade petitioner and respondent to have any contact with one another, whether "direct or indirect." In its 24 March 2015 order, the trial court waived further review hearings and relieved the parties and counsel from further responsibility in the case. The trial court retained jurisdiction in the case, however, concluding that respondent's "general noncompliance" and "mental health warrant a continued need for state intervention and jurisdiction for this minor child." *See* N.C.G.S. § 7B-201(a) (2019).

On 18 August 2017, more than twenty-six months after regaining custody of Katie, petitioner filed a petition to terminate respondent's parental rights. Petitioner alleged the following statutory grounds for termination: (1) neglect; (2) leaving Katie in a placement outside the home for more than twelve months without making reasonable progress to correct the conditions that led to her removal; (3) failure to pay a reasonable portion of the cost of Katie's care; (4) dependency; and (5) abandonment. N.C.G.S. § 7B-1111(a)(1)–(3), (6)–(7) (2019). Respondent filed an answer to the petition denying each of these alleged termination grounds.

The trial court held an adjudicatory hearing on 6 and 9 November 2018. On the second day of the hearing, petitioner voluntarily dismissed her claim under N.C.G.S. § 7B-1111(a)(3) (failure to pay a reasonable portion of the cost of the juvenile's care), conceding that the application of the ground only arose when a juvenile is in DSS custody. At the conclusion of the presentation of evidence,

respondent moved to dismiss petitioner's remaining claims on the basis of insufficient evidence. With regard to his alleged failure to make reasonable progress under N.C.G.S. § 7B-1111(a)(2), respondent argued that this ground for termination was also inapplicable because Katie was removed from petitioner's care for only six months between September 2014 and March 2015 and thus was not in a "placement outside the home for more than [twelve] months" as required by the governing statute. N.C.G.S. § 7B-1111(a)(2). After hearing from each party, the trial court took the matter under advisement, deferring the dispositional hearing pending its ruling on adjudication.

In a ruling captioned "Termination Order" which was entered on 6 May 2019, the trial court denied the petition, concluding that "[p]etitioner ha[d] failed her burden to prove by clear, cogent and convincing evidence that the necessary grounds exist to terminate the [r]espondent's parental rights." Petitioner filed timely notice of appeal after she was served with the order on 19 June 2019. *See* N.C.G.S. § 7B-1001(b) (2019).

*Analysis*

Petitioner begins with two related arguments which we consider together. She first challenges the trial court's conclusion of law that she failed to prove that "the necessary *grounds* exist" to support the termination of respondent's parental rights. (Emphasis added). Petitioner claims that the pluralization of the term "ground" illustrates that the trial court mistakenly believed that petitioner was obliged to

prove multiple "necessary grounds" for termination under N.C.G.S. § 7B-1111(a). Petitioner also contends that this sole conclusion of law of the trial court fails to disclose the specific deficiencies in petitioner's evidence regarding her burden of proof. In her second argument, petitioner asserts that the trial court failed to make sufficient findings of fact to support its conclusion regarding the lack of statutory grounds upon which to terminate respondent's parental rights.

In addressing the trial court's use of the term "necessary grounds" in its conclusion of law, we first recognize that at the adjudicatory stage of a termination of parental rights proceeding, the petitioner has the burden to prove the existence of at least one statutory ground for termination by clear, cogent, and convincing evidence. N.C.G.S. § 7B-1109(f) (2019). It is well-established that proof of any single statutory ground for termination is sufficient to meet the petitioner's burden. *See, e.g.*, *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982). Accordingly, "[a]fter an adjudication that *one or more grounds* for terminating a parent's rights exist," the trial court must proceed to disposition and "determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2019) (emphasis added).

While this Court agrees with petitioner that proof of multiple grounds for termination is not necessary for an adjudication under N.C.G.S. § 7B-1109(e), we are not persuaded that, by itself, the trial court's use of the phrase "necessary grounds"

which pluralizes the term "ground" connotes the commission of error by the trial court.

Among the common meanings of "grounds" is the "[b]asis or justification for something, as in 'grounds for divorce.'" https://www.yourdictionary.com/grounds (last visited June 30, 2020).[2] In addition, as shown by the following passage from our Rules of Civil Procedure which are codified in the North Carolina General Statutes, legal references often use the terms "ground" and "grounds" interchangeably to denote a single basis or reason:

> It is not *ground* for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence nor is it *grounds* for objection that the examining party has knowledge of the information as to which discovery is sought.

N.C.G.S. § 1A-1, 26(b)(1) (2019) (emphasis added). This same tendency appears in our case law. *Compare In re E.H.P.*, 372 N.C. 388, 391, 831 S.E.2d 49, 52 (2019) ("At the adjudication stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence that *grounds exist* for termination pursuant to section 7B-1111 of the General Statutes." (emphasis added)), *with id.* at 395, 831 S.E.2d at 53 ("As previously noted, an adjudication of *any single ground* in N.C.G.S. § 7B-1111(a) *is sufficient* to support a termination of parental rights." (emphasis added)). Likewise,

---

[2] *See also* https://www.merriam-webster.com (search "DICTIONARY" for "grounds") ("4 a: a basis for belief, action, or argument // *ground* for complaint —often used in plural // sufficient *grounds* for divorce")

in case citations, the phrase "*rev'd on other grounds*" may refer to a single alternative rationale for reversing a lower court's decision. *See* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION 501 tbl.T.8 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015). In light of this frequent interchangeable usage of the terms "ground" and "grounds" in legal authorities to refer to a singular basis for a decision, we are unwilling to conclude, without more than the trial court's facial reference to "grounds" in the order here, that the trial court harbored a mistaken belief that multiple statutory grounds for termination were necessary in order to terminate respondent's parental rights.

We do agree, however, with petitioner that the limited findings of fact and the single conclusion of law included in the trial court's "Termination Order" do not permit meaningful appellate review, and therefore they are insufficient to support the trial court's decision denying her petition. The pertinent statute governing adjudications, N.C.G.S. § 7B-1109, provides that the trial court "shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent." N.C.G.S. § 7B-1109(e) (2019). In addition to placing the burden of proof on the petitioner, the statute specifies that "all [adjudicatory] findings of fact shall be based on clear, cogent, and convincing evidence." N.C.G.S. § 7B-1109(f) (2019).

Here, the trial court concluded that petitioner had failed to prove any of her alleged grounds for terminating respondent's parental rights under N.C.G.S. § 7B-1111(a). In such circumstances, when the court "determine[s] that circumstances authorizing termination of parental rights do not exist," the dispositional statute provides that "the court shall dismiss the petition or deny the motion,[3] *making appropriate findings of fact and conclusions.*" N.C.G.S. § 7B-1110(c) (2019) (emphasis added).

We have previously held that N.C.G.S. § 7B-1109(e) "places a duty on the trial court as the adjudicator of the evidence"[4] which is equivalent to the duty imposed by Rule 52(a)(1) of the North Carolina Rules of Civil Procedure. *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 59 (2019) (citing N.C.G.S. § 1A-1, Rule 52(a)(1) (2019)). Rule 52(a)(1) mandates that, "[i]n all actions tried upon the facts without a jury . . . , the court shall find the facts specially and state separately its conclusions of law

---

[3] When a juvenile is the subject of a pending abuse, neglect, or dependency proceeding, a party seeking termination of parental rights may file a motion in the cause in lieu of a petition. *See* N.C.G.S. § 7B-1102 (2019). As a technical matter, N.C.G.S. § 7B-1110(c) directs the trial court to *dismiss* a petition and to *deny* a motion. However, we shall refer to the trial court's disposition in this case as denying petitioner's petition, as that wording is used in the "Termination Order."

[4] The fact-finding requirement which is essential to support the trial court's dispositional determination of a child's best interests is governed by N.C.G.S. § 7B-1110(a) (2019), which provides that the court "shall consider the following [six] criteria and *make written findings regarding the following that are relevant*[.]" *Id.* (emphasis added); *see also In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 424 (2019) ("[A] factor is 'relevant' if there is 'conflicting evidence concerning' the factor, such that it is 'placed in issue by virtue of the evidence presented before the [district] court[.]' " (second and third alterations in original) (quoting *In re H.D.*, 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015))).

thereon[.]" N.C.G.S. § 1A-1, Rule 52(a)(1). In explaining the trial court's obligation arising under N.C.G.S. § 7B-1109(e), we quoted a prior decision of this Court which applied Rule 52(a)(1):

> [W]hile Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

*In re T.N.H.*, 372 N.C. at 407–08, 831 S.E.2d at 59 (quoting *Quick v. Quick*, 305 N.C. 446, 451–52, 290 S.E.2d 653, 658 (1982) (emphasis and alteration in original)). "The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment—and the legal conclusions which underlie it— represent a correct application of the law." *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980).

By its own terms, N.C.G.S. § 7B-1109(e) applies equally to instances in which the trial court "adjudicate[s] the existence *or nonexistence* of any of the circumstances set forth in G.S. 7B-1111[.]" *Id.* (emphasis added). Subsection 7B-1110(c) expressly requires the trial court to "mak[e] appropriate findings of fact and conclusions" when denying relief based on the absence of statutory grounds for termination. Consequently, we interpret N.C.G.S. § 7B-1109(e) as placing the same duty on the

trial court to "find the facts specially and state separately its conclusions of law thereon," regardless of whether the court is granting or denying a petition to terminate parental rights. N.C.G.S. § 1A-1, Rule 52(a)(1); *see also In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 59.

In its "Termination Order," the trial court found dozens of evidentiary facts recounting the parties' respective actions during the course of the underlying juvenile proceeding and describing respondent's current employment, mental health diagnosis, and family life. Nonetheless, the trial court found none of the ultimate facts required to support an adjudication of "the existence *or nonexistence* of any of the circumstances set forth in G.S. 7B-1111 . . . ." N.C.G.S. § 7B-1109(e) (emphasis added). Combined with the trial court's bare conclusion of law[5] that petitioner failed to prove that "the necessary grounds exist to terminate the [r]espondent's parental rights[,]" these evidentiary findings do not meet the requirements of Rule 52(a)(1) as applied to adjudicatory orders under N.C.G.S. §§ 7B-1109(e) and -1110(c).

"Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts." *Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951). We have recognized that

---

[5] We note the trial court also concluded that it "ha[d] jurisdiction over the matter pursuant to N.C.G.S. § 7B-1101 [(2019),]" and that respondent's parental rights "should not be terminated." Neither of these additional conclusions alters our view that the court's adjudicatory findings are inadequate.

the line of demarcation between ultimate facts and legal conclusions is not easily drawn. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law.

*Id.* at 472, 67 S.E.2d at 645 (citations omitted); *see also In re N.D.A.*, 373 N.C. 71, 76, 833 S.E.2d 768, 772–73 (2019) (defining "an 'ultimate finding [a]s a conclusion of law or at least a determination of a mixed question of law and fact' [which] should 'be distinguished from the findings of primary, evidentiary, or circumstantial facts.' " (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491, 57 S. Ct. 569, 574, 81 L. Ed. 755, 762 (1937)).

Compliance with the fact-finding requirements of N.C.G.S. §§ 7B-1109(e) and -1110(c) is critical because

[e]ffective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Quick*, 305 N.C. at 458, 290 S.E.2d at 661 (quoting *Coble*, 300 N.C. at 714, 268 S.E.2d at 190).

Here, petitioner presented the trial court with four potential grounds for the

termination of respondent's parental rights: neglect under N.C.G.S. § 7B-1111(a)(1); lack of reasonable progress under N.C.G.S. § 7B-1111(a)(3); dependency under N.C.G.S. § 7B-1111(a)(6); and abandonment under N.C.G.S. § 7B-1111(a)(7). The trial court neglected to find the ultimate facts which would be dispositive of any of these grounds. Moreover, the trial court's general conclusion of law singly offers no analysis of the legal standards applied to petitioner's claims.

Subdivision 7B-1111(a)(1) authorizes the trial court to terminate one's parental rights upon proof that "[t]he parent has . . . neglected the juvenile." N.C.G.S. § 7B-1111(a)(1). The trial court found that Katie had been adjudicated as neglected on 3 December 2014, but made no findings on the dispositive question of whether respondent was neglecting Katie at the time of the termination hearing within the meaning of N.C.G.S. § 7B-101(15) (2019). *See, e.g.*, *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) ("A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding.").

Similarly, with regard to N.C.G.S. § 7B-1111(a)(2), the trial court's findings do not address whether respondent "willfully left the juvenile in foster care or placement outside the home for more than 12 months"[6] and, if so, whether "reasonable progress

---

[6] We do not reach the merits of respondent's contention that N.C.G.S. § 7B-1111(a)(2) would seem inapplicable to the facts of this case inasmuch as Katie was in her mother's custody at the time that the petition was filed. *See generally In re A.C.F.*, 176 N.C. App. 520, 526, 626 S.E.2d 729, 734 (2006) (measuring the period of "more than twelve months" under N.C.G.S. § 7B-1111(a)(2) as "beginning when the child was 'left' in foster care or placement

under the circumstances has been made [by respondent] in correcting those conditions which led to the removal of the juvenile." *Id.*; *see also In re O.C.,* 171 N.C. App. 457, 464, 615 S.E.2d 391, 396 (articulating "two[-]part analysis" for adjudications under N.C.G.S. § 7B-1111(a)(2)), *disc. review denied,* 360 N.C. 64, 623 S.E.2d 587 (2005); *In re C.C.,* 173 N.C. App. 375, 384, 618 S.E.2d 813, 819 (2005) (reversing termination of parental rights under N.C.G.S. § 7B-1111(a)(2) where "the trial court's order does not contain adequate findings of fact that respondent acted 'willfully' or . . . adequate findings on respondent's progress").

An adjudication of dependency under N.C.G.S. § 7B-1111(a)(6) requires a showing that (1) "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and . . . there is a reasonable probability that such incapability will continue for the foreseeable future[,]" and (2) "the parent lacks an appropriate alternative child care arrangement." *Id.* "Thus, the trial court's findings regarding this ground 'must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.' " *In re L.R.S.,* 237 N.C. App. 16, 19, 764 S.E.2d 908, 910 (2014)

---

outside the home pursuant to a court order, *and ending when the motion or petition for termination of parental rights was filed*"); *see also* N.C.G.S. § 7B-101(18b) (2019) (defining "[r]eturn home or reunification" as "[p]lacement of the juvenile *in the home of either parent* or placement of the juvenile in the home of a guardian or custodian from whose home the child was removed by court order" (emphasis added)).

(quoting *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005)).

Because proof of both the parent's incapability to provide proper care and supervision and the parent's lack of an alternative child care arrangement is required to terminate parental rights under N.C.G.S. § 7B-1111(a)(6), a trial court may adjudicate the nonexistence of this ground by finding the absence of either element, or by finding the petitioner's failure to prove either element by clear, cogent, and convincing evidence. N.C.G.S. § 7B-1109(c); *see also* N.C.G.S. §§ 7B-1109(e), -1110(c). In the instant case, the trial court made neither of these potential findings.

We note that petitioner does not argue on appeal that the evidence supported the termination of respondent's parental rights for dependency. Although petitioner does not expressly abandon this termination ground, nonetheless its omission from the pertinent arguments of her appellate brief implies that she recognizes that the circumstances contemplated by N.C.G.S. § 7B-1111(a)(6) do not exist in this case. As discussed, the statutory provision requires proof here that respondent's inability to provide for Katie's care and supervision rendered her "a dependent juvenile within the meaning of G.S. 7B-101[.]" N.C.G.S. § 7B-1111(a)(6). Section 7B-101 defines a "[d]ependent juvenile" as

> in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement.

N.C.G.S. § 7B-101(9) (2019). Regardless of respondent's abilities, Katie was not "in need of assistance or placement" at the time that the petition was filed because she was in the legal and physical custody of her mother. *Id.* Accordingly, Katie was not "a dependent juvenile within the meaning of G.S. 7B-101" as required to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6).

Finally, N.C.G.S. § 7B-1111(a)(7) authorizes the termination of parental rights if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition . . . ." *Id.* Although not defined by North Carolina's Juvenile Code, "abandonment imports any wil[l]ful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). This Court has specifically held that the issue of the willfulness of a parent's conduct is "a question of fact to be determined from the evidence." *Id.*

The trial court's findings in the present case offer no assessment regarding the willfulness of respondent's conduct toward Katie on the matter of abandonment during the six months at issue under N.C.G.S. § 7B-1111(a)(7). *See In re I.R.L.*, 263 N.C. App. 481, 484, 823 S.E.2d 902, 905 (N.C. Ct. App. 2019) (remanding for further findings where "[t]he trial court's order fails to address the willfulness of Father's conduct, a required element under N.C. Gen. Stat. § 7B-1111(a)(4) and (7)"). The inadequacy of the trial court's findings is further displayed by its failure to identify

"the determinative six-month period" governing its abandonment inquiry. *In re C.B.C.*, 373 N.C. 16, 23, 832 S.E.2d 692, 697 (2019).

In urging this Court to affirm the "Termination Order," both respondent and the guardian *ad litem* (GAL) emphasize the large number of evidentiary findings made by the trial court. They cite the Court of Appeals decision of *In re B.C.T.*, 828 S.E.2d 50 (N.C. Ct. App. 2019) as disclaiming the need for particular "magic words" in the trial court's findings of fact.[7] *Id.* at 58. However, the sufficiency of the trial court's order is not measured merely by the quantity of findings or the trial court's parlance. We are simply unable to undertake meaningful appellate review of the trial court's decision based upon a series of evidentiary findings which are untethered to any ultimate facts which undergird an adjudication pursuant to N.C.G.S. § 7B-1111(a) or to any particularized conclusions of law which would otherwise explain the

---

[7] We announced a similar principle in affirming an order that ceased reunification efforts toward a respondent-parent under the statutory predecessor to N.C.G.S. § 7B-906.2(b) (2019), which required the court to make certain findings of fact before ceasing such efforts:

> While [the trial court's] findings of fact do not quote the precise language of [former N.C.G.S. §] 7B-507(b), the order embraces the substance of the statutory provisions requiring findings of fact that further reunification efforts "would be futile" or "would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time."

*In re L.M.T.*, 367 N.C. 165, 169, 752 S.E.2d 453, 456 (2013). In *In re L.M.T.*, we opined that "[t]he trial court's written findings must address the statute's concerns, but need not quote its exact language." *Id.* at 168, 752 S.E.2d at 455. Because the order *sub judice* lacks any ultimate findings addressing the gravamen of N.C.G.S. § 7B-1111(a), we need not consider the degree to which our holding in *In re L.M.T.* applies to an adjudicatory order entered pursuant to N.C.G.S. §§ 7B-1109(e) and -1110(c).

trial court's reasoning.[8]

The Court of Appeals faced a different, though instructively relevant, issue in *In re B.C.T.*, where the trial court's dispositional order included a finding, unsupported by evidence, that a certain party was "a fit and proper person to have the care, custody, and control of the [j]uvenile." *In re B.C.T.*, 828 S.E.2d at 58. The order also included a conclusion of law "[t]hat it is in the best interests of the [j]uvenile for [the party] to be granted the care, custody, and control of the [j]uvenile." *Id.* In reversing and remanding for a new hearing, the Court of Appeals "noted that the trial court need not use 'magic words' in its findings of fact or conclusions of law, if the evidence and findings overall make the trial court's basis for its order clear." *Id.* However, just as the use of specific terminology was not necessary in *In re B.C.T.* to sustain the custody award, conversely the trial court's use of such terms in the present case as "fit and proper person" and "best interests of the [j]uvenile" was insufficient to substantiate its order. *Id.* ("Here, we have disposition orders with 'magic words' but no evidence to support some of the crucial findings of fact and thus no support for the related conclusions of law.").

---

[8] We must decline to speculate about how the evidentiary facts led the trial court to conclude that petitioner had failed to prove the existence of any of her alleged grounds for termination. To indulge in such conjecture would exceed the proper scope of appellate review, thus undermining the purpose of Rule 52(a)(1) and the coordinate requirements of N.C.G.S. § 7B-1109(e) "to allow a reviewing court to determine from the record whether the judgment—and the legal conclusions which underlie it—represent a correct application of the law." *Coble*, 300 N.C. at 712, 268 S.E.2d at 189; *see also Godfrey v. Zoning Bd. of Adjustment of Union Cty.*, 317 N.C. 51, 63, 344 S.E.2d 272, 279 (1986) ("Fact finding is not a function of our appellate courts.").

Because the 'Termination Order" under review here does not contain any of the "magic words" associated with an adjudication under N.C.G.S. § 7B-1111(a), we find the holding of *In re B.C.T.* to be inapplicable, even though the analysis employed in that decision aids our examination. The issue before the Court in this case is not the lack of supporting evidence for the trial court's findings and conclusions, but a lack of adequate findings and conclusions which would "make the trial court's basis for its order clear." *Id.*

Respondent and the GAL also reference the Court of Appeals opinion of *In re S.R.G.*, 200 N.C. App. 594, 684 S.E.2d 902 (2009), *disc. review and cert. denied*, 363 N.C. 804, 691 S.E.2d 19 (2010) (*S.R.G. II*), for the principle that a trial court's failure to address an alleged ground for termination in its order amounts to a tacit "non-adjudication of that ground." They appear to argue, by way of extension of this holding from *In re S.R.G.*, that a trial court's order does not need to address *any* of the specific grounds for termination alleged by a petitioner when the trial court concludes that none of the alleged grounds exist. To hold otherwise, the GAL contends, would require all future orders terminating parental rights "to list all of the grounds that [the trial court] had not adjudicated," thereby imposing "an unnecessary new requirement" on trial courts and creating "a potential pitfall for other petitioners."

Respondent and the GAL, in their respective positions, misconstrue *S.R.G. II*, which involved an appeal which was lodged after remand of the Court of Appeals'

prior decision in *In re S.R.G.*, 195 N.C. App. 79, 671 S.E.2d 47 (2009) (*S.R.G. I*). The petitioner in *S.R.G. I* alleged four grounds for terminating the respondent's parental rights, including neglect and abandonment under N.C.G.S. § 7B-1111(a)(1) and (7). *Id.* at 81, 671 S.E.2d at 49. The trial court originally entered an order terminating the respondent's parental rights, finding "as its sole basis for termination" that the respondent had willfully abandoned the child. *Id.* at 82, 671 S.E.2d at 50. In the respondent's appeal in *S.R.G. I*, the Court of Appeals held that the trial court had erred in adjudicating abandonment based on the respondent's "actions during the relevant six[-]month period[.]" *Id.* at 87, 671 S.E.2d at 53. The cause was remanded to the trial court "for further action consistent with this opinion." *Id.* at 88, 671 S.E.2d at 53.

On remand, the trial court entered a new order terminating the respondent's parental rights on the grounds of neglect under N.C.G.S. § 7B-1111(a)(1). *S.R.G. II*, 200 N.C. App. at 597, 684 S.E.2d at 904. In *S.R.G. II*, the Court of Appeals held that the "law of the case" doctrine barred the trial court from adjudicating a new ground for termination on remand which had not been found in its original order. *Id.* at 597–98, 684 S.E.2d at 904–05. The Court of Appeals reasoned that N.C.G.S. § 7B-1109(e) provides that the trial court "*shall adjudicate the existence or nonexistence of any of the circumstances* set forth in G.S. 7B–1111" at the adjudicatory hearing. *Id.* at 598, 684 S.E.2d at 905. This statutory language required the trial court to address all of the petitioner's alleged grounds at the initial termination hearing. Therefore, the

Court of Appeals concluded, the "consequence" of the trial court's original order adjudicating the existence of abandonment under N.C.G.S. § 7B-1111(a)(7) was "the nonexistence of the other two grounds alleged by [the petitioner.]" *Id.*

At first glance, *S.R.G. II* might appear to support the joint position of respondent and the GAL that a trial court's failure to address an alleged ground for termination amounts to a proper adjudication of the nonexistence of the alleged ground. While a trial court's failure to address an alleged ground can imply that the trial court was not persuaded it existed, it tells a reviewing court nothing about how or why the trial court reached such a conclusion. The Court of Appeals did not affirm the reasoning of the trial court's original termination order or otherwise imply that the trial court's silence was sufficient to comply with the requirement that courts "find the facts" under N.C.G.S. § 7B-1109(e). The opinion in *S.R.G. II* instead noted that the petitioner had "failed in *S.R.G.* [*I*] to cross-assign error" to the trial court's non-adjudication of the two grounds in its original order. *S.R.G. II*, 200 N.C. App. at 599, 684 S.E.2d at 905; *see also* N.C. R. App. P. 10(c), 28(c) (allowing appellee to "present issues on appeal based on any action or omission of the trial court that deprived the appellee of an alternative basis in law for supporting the judgment"). Because the petitioner "did not preserve this issue" by raising it on appeal in *S.R.G. I*, the law of the case doctrine barred the Court of Appeals from addressing any new potential errors in the original termination order in *S.R.G. II. Id.*

Furthermore, both *S.R.G. I* and *S.R.G. II* involved a trial court's order

terminating parental rights. The trial court's order in the current case denied petitioner's termination petition pursuant to N.C.G.S. § 7B-1110(c). This distinction makes a difference, for as previously discussed, an adjudication of any statutory ground for termination under N.C.G.S. § 7B-1111(a) triggers the trial court's duty to proceed to disposition in order to "determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a). In the context of a termination order, therefore, the trial court's failure to address more than the single ground needed to terminate parental rights will often be harmless, albeit erroneous, under N.C.G.S. § 7B-1109(e).

By contrast, when the trial court denies a petition at the adjudicatory stage pursuant to N.C.G.S. § 7B-1110(c), the order must allow for appellate review of the trial court's evaluation of *each and every* ground for termination alleged by the petitioner. In this circumstance, the implementation of a principle that a trial court's silence on an alleged ground amounts to a proper adjudication of its nonexistence would hinder appellate review and effectually nullify the statutory requirement that the trial court "mak[e] appropriate findings of fact and conclusions." N.C.G.S. § 7B-1110(c).

Contrary to the GAL's assertion, our conclusion that a trial court must comply with N.C.G.S. §§ 7B-1109(e) and -1110(c) in denying a petition for the termination of parental rights is neither novel nor contrary to existing case law. Rather than placing an "unnecessary new" burden on the trial courts of the state, our holding merely

reiterates that the trial courts must make findings of "those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached." *Quick*, 305 N.C. at 451, 290 S.E.2d at 657. This requirement is consistent with the trial court's duty regarding the entry of judgments following civil bench trials under N.C.G.S. § 1A-1, Rule 52(a)(1), s*ee id.* at 450–51, 290 S.E.2d at 657, and reinforced by this Court in our decision in *In re T.N.H.*, 372 N.C. at 407–08, 831 S.E.2d at 59.

*Conclusion*

We hold that the trial court erred in its failure to enter sufficient findings of ultimate fact and conclusions of law to support its dismissal of the petitioner's termination of parental rights petition pursuant to N.C.G.S. § 7B-1110(c). Therefore, we vacate the "Termination Order" and remand this matter to the trial court for the entry of additional findings and conclusions. *See Coble*, 300 N.C. at 714, 268 S.E.2d at 190; *In re I.R.L.*, 823 S.E.2d at 906. On remand, we leave to the discretion of the trial court whether to hear additional evidence. *See, e.g., In re I.R.L.*, 823 S.E.2d at 906. In light of our determination, we do not address petitioner's remaining arguments on appeal.

VACATED AND REMANDED.