An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-461

Filed 16 July 2025

Burke County, Nos. 21JT000101-110, 21JT000102-110

IN THE MATTER OF: T.T.R.K., D.F.P.

Appeal by respondent-father from order entered 15 February 2024 by Judge Robert A. Mullinax, Jr. in Burke County District Court. Heard in the Court of Appeals 12 June 2025.

> *Vitrano Law Offices, PLLC, by Sean P. Vitrano, for appellant-respondent-father.*

> *Amanda C. Perez for petitioner-appellee Burke County Department of Social Services.*

> *Brittany T. McKinney for Guardian ad Litem.*

PER CURIAM.

Respondent-father appeals from the trial court's order terminating his parental rights to his son Daniel.[1] Counsel for respondent-father has filed a no merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. Counsel

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

for respondent-father made diligent efforts to notify his client that a no merit brief has been filed, however respondent-father has not responded to his counsel's notifications. For the following reasons, we affirm the trial court's order and remand for correction of a clerical error.

## I.     Background

On 14 July 2021, the Burke County Department of Social Services ("DSS") filed a petition alleging Thomas and Daniel were neglected and dependent. The petition noted that paternity was an issue for both children. The petition alleged that on 9 June 2021, Catawba County received a Child Protective Services Report after reports from the Children's Developmental Services Agency, Triple Parenting for Behavior and the Olson Huff Center in Asheville made referrals after the children's mother failed to attend wellness and behavior checks.

Catawba County DSS conducted an initiation on 10 June 2021 and transferred the case to Burke County DSS. On 17 June 2021, Burke County DSS conducted a check at mother's home. During this check, DSS reported that mother admitted to using methamphetamines and believed that Daniel had attention deficit hyperactivity disorder, oppositional defiant disorder, and autism.

On 22 June 2021, DSS reported to mother's home for another check. When DSS arrived, the landlord stated that mother had been taken to the hospital with Daniel and that mother and her children were no longer welcome to live there. At this point, DSS discovered that mother was 30 weeks pregnant and had to go to the

hospital due to pregnancy complications.

On 4 July 2021, mother gave birth to Thomas. Thomas's umbilical cord tested positive for amphetamines and methamphetamines. On 6 July 2021, mother identified respondent-father as Thomas's biological father. DSS was unable to contact respondent-father while Thomas was still in the hospital. Holly Rose, the on-call social worker in Burke County, received a call from High Point Medical Center where mother was being treated, stating that Thomas should not be left unsupervised with mother. Thus, DSS determined that Thomas and Daniel needed to be placed in Temporary Safety Placement due to substance concerns and petitioned for nonsecure custody of both children on 14 July 2021. Mother identified two placement options; however, neither of these placements were readily available to take the children. While she was still in the hospital, mother spoke with Guilford County DSS and stated there was a domestic violence history between respondent-father and mother.

On 6 August 2021, Amy Kincaid was appointed as guardian ad litem for the children. On 28 October 2021, DSS filed a continuance to maintain nonsecure custody of the children. In an order granting this continuance, the trial court found that results from a paternity test revealed that respondent-father was the biological father for Daniel but not Thomas. Furthermore, respondent-mother stated that "she had no way of knowing who the father of" Thomas was. On 28 October 2021, respondent-father was granted visitation with Daniel based on a schedule set by DSS.

A hearing on DSS's petition to adjudicate Thomas and Daniel neglected and

dependent took place on 10 November 2021. During the hearing, the trial court heard testimony from several social workers who had interacted with mother and who had attempted to contact respondent-father on multiple occasions. Furthermore, the trial court made several findings of fact about respondent-father and mother's drug use and how Thomas's drug screens tested positive for methamphetamines and amphetamines. Respondent-father was also asked to submit to a urine drug screen in court and tested positive for THC. Thomas and Daniel were adjudicated neglected and dependent. The trial court ordered that custody of the children will remain with Burke County DSS with DSS arranging for the children to be placed in foster care. While Daniel was in foster care, he acted aggressively towards several foster parents and foster siblings.

On 3 February 2022, the trial court held a permanency planning hearing to determine whether DSS should retain custody of Thomas and Daniel. Following the hearing, the trial court found that mother had not complied with any medical or substance abuse services requested by DSS and continued to have substance abuse issues. Furthermore, respondent-father had again tested positive for THC during an in-court urine drug screen, reported that he lost his housing and employment, and had missed nine visitation appointments with Daniel in the four months prior to the hearing. Respondent-father agreed to complete a comprehensive clinical assessment, complete a substance assessment, submit to random drug screens, complete a parenting capacity evaluation, and obtain safe and suitable housing. The trial court

ordered that custody of Thomas and Daniel remain with DSS and DSS should arrange for foster care for the children.

A second permanency planning hearing occurred on 26 May 2022. Following this hearing, the trial court found that respondent-father had not completed his comprehensive clinical assessment and that there were no changes in his employment and housing status since the 3 February 2022 hearing. Finally, the trial court found that respondent-father had ongoing substance abuse issues and should be evaluated for untreated mental health issues. The trial court found that respondent-father was not making adequate progress towards reunification within a reasonable period of time and ordered that custody of both Thomas and Daniel remain with DSS.

A third permanency planning hearing took place on 15 September 2022. Following this hearing, the trial court found that respondent-father had failed to comply with requests for drug screenings, failed to attend appointments to begin parenting capacity evaluation, and was still not employed.

A fourth permanency planning hearing occurred on 19 January 2023. During this hearing, respondent-father testified that he had completed a comprehensive clinical assessment and a substance abuse assessment; however, DSS indicated that they had not received a copy of either evaluation even after repeated attempts to obtain those documents. The court found that on 21 December 2022, respondent-father failed to submit a requested drug screening; that while respondent-father claimed he had found employment, he had failed to provide verifiable proof of

employment. The court further found that respondent-father had been participating in a housing program in Marion, North Carolina, but had been removed from the program when he was caught stealing from other program members.

A fifth permanency planning hearing took place on 27 April 2023. Following the hearing, the trial court found that respondent-father's status remained relatively unchanged since the last permanency planning hearing; that respondent-father continued to have a substance abuse problem and lacked stable housing and employment. Furthermore, the trial court found that respondent-father had not taken any actions to address his parenting deficits.

On 10 July 2023, DSS filed a petition for termination of parental rights. DSS asserted that both parents had willfully left the children in foster care "for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juveniles." DSS specifically alleged that respondent-father failed to release his comprehensive clinical assessment and substance abuse assessment to DSS and tested positive for THC during a recent drug screening. DSS further alleged that respondent-father was incapable of providing proper care and supervision to Thomas and Daniel because of his unresolved substance abuse issues and lack of stable employment and housing. Mother was served with summons on 11 November 2023 and respondent-father was served on 13 October 2023.

A sixth permanency planning hearing occurred on 14 September 2023.

Following the hearing, the trial court found that respondent-father admitted himself to a partial hospitalization thirty-day rehab program on 7 June 2023 and entered sober living after the program was completed, but respondent-father left sober living after nine days after he had a relapse. Once again, the trial court ordered that custody of both Thomas and Daniel remain with DSS.

A hearing for DSS's petition to terminate parental rights took place on 19 January 2024. Respondent-father was not present during the hearing but was represented by his counsel. During the hearing, Iliana Aquirre ("Ms. Aquirre"), a social worker for Burke County DSS, testified that she believed there was a high likelihood that neglect of the children would continue if Thomas and Daniel were returned to mother and respondent-father. Ms. Aquirre described repeated efforts to assist respondent-father in completing his assessments and complying with drug screening requests. However, she did testify that respondent-father completed a parenting capacity evaluation on 9 February 2023, where he was diagnosed with persistent depressive disorder and paranoid personality characteristics. Ms. Aquirre confirmed that at the time of the hearing, respondent-father had not reported any stable housing or employment. Respondent-father did not provide any contrary evidence during the hearing. Accordingly, the trial court found there was clear, cogent, and convincing evidence that grounds existed to terminate the parental rights of Thomas and Daniel for mother and respondent-father.

On 15 February 2024, the trial court entered an order to terminate parental

rights to Thomas and Daniel for mother and respondent-father. In this order, the trial court summarized previous facts and oral findings made on the day of the hearing. Specifically, the trial court found that both mother and respondent-father experienced "substance abuse issues while the children were in their care" and that respondent-father had not addressed his longstanding substance abuse issues.

Based upon all the findings of fact, the trial court concluded that it was in the best interest of Thomas and Daniel that the mother and respondent-father's parental rights be terminated. In the dispositional order, the trial court incorrectly concluded that "the parental rights of [respondent-father] are hereby terminated to the juvenile, [Thomas]," even after paternity tests confirmed that Thomas was not the biological child of respondent-father.

Respondent-father filed written notice of appeal on 11 March 2024. On 1 August 2024, all parties jointly moved to dismiss respondent-father's appeal as to Thomas due to lack of standing. This Court granted that motion on 2 August 2024.

## II.     Discussion

Respondent-father's counsel filed a no merit brief, after they "carefully reviewed the record on appeal and all materials in the underlying juvenile case file[.]" Counsel for respondent-father made diligent efforts to notify his client that a no merit brief was filed; however respondent-father has not responded to his counsel's notifications. Pursuant to Rule 3.1(e), counsel proposed two issues for this Court to consider on review: first, whether grounds existed to terminate respondent-father's

parental rights under N.C.G.S. § 7B-1111(a)(1), (2), (6), and (7); and second, whether the trial court abused its discretion in determining that terminating respondent-father's parental rights was in Daniel's best interest. DSS requests the termination order be remanded to correct the clerical error to state that respondent-father's parental rights are terminated in regards to Daniel and not Thomas.

"We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). Unchallenged findings of fact made by the trial court are binding on appeal. *In re Z.V.A.*, 373 N.C. 207, 211 (2019). "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. 3, 6 (2019).

The court found that respondent-father made limited progress with completing the plan assigned to him by DSS. Respondent-father claimed to have completed a comprehensive clinical assessment but had not signed a release to allow DSS to review the records. Furthermore, when records were subpoenaed, they revealed that respondent-father only completed a psychological exam and had not completed either the comprehensive clinical assessment or a substance abuse assessment. These findings were supported by testimony from Burke County social workers.

Respondent-father did not challenge the trial court's finding that during the six months prior to the filing for termination, respondent-father did not inquire about

Daniel's health, safety, or welfare, or make efforts to maintain or establish a parental bond with Daniel by sending him gifts or letters. The trial court also made several unchallenged findings of fact that respondent-father had not been able to find stable housing or employment at the time of the hearing. Furthermore, respondent-father did not challenge the finding that he was removed from sober living because he relapsed. Thus, the trial court did not err in its findings of fact or conclusions of law.

At the dispositional stage, the trial court must consider the following facts in determining whether terminating the parent's rights is in the juvenile's best interest:

> (1) The age of the juvenile.
> (2) The likelihood of adoption of the juvenile.
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
> (4) The bond between the juvenile and the parent.
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2024).

Here, the trial court found that, given Daniel's age and the fact that he will be moved to a therapeutic placement, "adoption is likely" and that termination of respondent-father's parental rights would achieve permanence for Daniel. The trial court further found that respondent-father had no bond with Daniel and that Daniel does not ask about respondent-father. Thus, the trial court made the necessary findings of fact in concluding that terminating respondent-father's parental rights was in Daniel's best interest, and accordingly did not abuse its discretion.

Finally, as DSS correctly points out, in the dispositional order, the trial court incorrectly held that "the parental rights of [respondent-father] are hereby terminated to the juvenile, [Thomas]," even after paternity tests confirmed that Thomas was not the biological child of respondent-father. "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record 'speak the truth'" *State v. Smith*, 188 N.C. App. 842, 845 (2008) (citations omitted).

Here, all parties agree that Thomas is not the biological child of respondent-father. Additionally, all parties motioned to dismiss respondent-father's appeal with regards to Thomas. Accordingly, the matter should be remanded for entry of a new dispositional order that reflects that respondent-father's parental rights are terminated for Daniel and not Thomas.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's order terminating respondent-father's parental rights and remand for correction of a clerical error in the dispositional order.

AFFIRMED IN PART AND REMANDED IN PART FOR CORRECTION OF CLERICAL ERROR.

Panel consisting of Judges ARROWOOD, WOOD AND FLOOD

Report per Rule 30(e).