IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-89

No. 260A21

Filed 15 July 2022

IN THE MATTER OF: M.C., M.C., and M.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 9 April 2021 by Judge Resson O. Faircloth in District Court, Harnett County. This matter was calendared in the Supreme Court on 1 July 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Duncan B. McCormick, Staff Attorney, for petitioner-appellee Harnett County Department of Social Services.*

*Mobley Law Office, P.A., by Marie H. Mobley, for appellee Guardian ad Litem.*

*Wendy C. Sotolongo, Parent Defender, and Jacky Brammer, Assistant Parent Defender, for respondent-appellant father.*

HUDSON, Justice.

¶ 1    Respondent-father appeals from the trial court's order terminating his parental rights in M.C. (Michael), M.C. (Monica), and M.C. (Maxine).[1] We affirm.

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identity and for ease of reading.

### I. Factual and Procedural Background

Michael, Monica, and Maxine were born in February 2014, June 2015, and August 2016, respectively. On 23 August 2017, the Harnett County Department of Social Services (DSS) obtained nonsecure custody of Michael, Monica, and Maxine and filed juvenile petitions alleging them to be neglected juveniles. The petitions alleged a family history with DSS and Cumberland County Department of Social Services dating back to 2015. On 12 May 2015, DSS began working with the family after "several severe incidences of domestic violence between the parents" while in Michael's presence. Respondent-parents' relationship "continued with the same pattern of violence" over the next two years.

Domestic violence was not the only concern. The petitions further alleged that respondent-parents "would use illegal drugs and non-prescribed medications while caring for the children" and "would leave the children with family members . . . for several months" without providing "information as to where they were going or when they would return." At Maxine's birth in 2016, she tested positive for barbiturates, and respondent-mother tested positive for marijuana, benzodiazepines, and cocaine. On 17 March 2017, respondent-father "threatened to kill the children while they were in his care" and "refused to return them" to respondent-mother. Shortly thereafter, respondent-father was arrested on charges of identity theft and possession with intent to sell and deliver cocaine. He was imprisoned at the Craven County

Correctional Institute and was expected to remain there for twelve to twenty-five months.

After hearing the juvenile petitions on 22 September 2017, the trial court entered an order the same day adjudicating the children to be neglected juveniles. Both parents were ordered to enter into a family services agreement. Pertinent to this appeal, respondent-father was required to comply with seven directives: (1) contact DSS upon release from incarceration; (2) participate in any services or programs available in jail or prison and provide documentation of his progress to DSS and the trial court; (3) cooperate with a substance abuse assessment and follow all recommendations; (4) complete a domestic violence assessment and follow all recommendations; (5) obtain and maintain employment upon release from incarceration and demonstrate an ability to financially care for his children; (6) obtain and maintain appropriate housing upon release from incarceration; and (7) sign releases for information as requested by DSS and the guardian ad litem.

Following a permanency planning hearing on 15 December 2017, the trial court entered an order on 7 February 2018 finding that respondent-father remained incarcerated with a projected release date of April 2018. The primary permanent plan was set as reunification, with a secondary plan of guardianship. The trial court also set a third permanent plan of adoption. The trial court granted respondent-father a

minimum of one hour of weekly supervised visitation upon his release from incarceration.

¶ 6        Following a permanency planning hearing on 10 August 2018, the trial court entered an order finding that although respondent-father had been released from prison in April 2018, he was currently incarcerated in Harnett County on pending charges dating from 2016. The trial court changed the primary permanent plan to adoption, with a secondary plan of guardianship and a concurrent secondary plan of reunification.

¶ 7        Following a permanency planning hearing on 2 November 2018, the trial court entered an order on 11 January 2019 finding that although respondent-father was "able to . . . send cards and letters" to his children while incarcerated, he had failed to do so. Respondent-father's projected release date from Harnett County was in January 2019.

¶ 8        Following a permanency planning hearing on 29 March 2019, the trial court entered an order on 23 May 2019 finding that respondent-father had been released from prison in February 2019, that respondent-father had participated in two visits with his children since his release, and that the "children know him" and the visits "went well." The court further found that on 12 March 2019, respondent-father had completed a substance abuse assessment which recommended he abstain from marijuana use; however, on 13 March 2019, he failed to appear for a drug screen. He

attended an intake session at HALT, a domestic violence treatment program, but reported not being able to continue with the program because he could not afford the program fees. Respondent-father further reported obtaining housing and employment and earning about $250 per week. The trial court set the primary permanent plan as adoption, with a secondary permanent plan of reunification with respondent-father.

¶ 9        On 17 July 2019, DSS filed a motion to terminate respondent-father's parental rights to Michael, Monica, and Maxine on the grounds of neglect, willful failure to make reasonable progress, and failure to pay for a reasonable portion of the cost of care for the juveniles.[2] *See* N.C.G.S. § 7B-1111(a)(1)–(3) (2021). Following a hearing on 31 July 2020 on the motion to terminate respondent-father's parental rights, the trial court entered an order on 9 April 2021 determining that three grounds existed to terminate his parental rights as alleged in the petition. The trial court also concluded that it was in the children's best interests that respondent-father's parental rights be terminated. *See id.* § 7B-1110(a) (2021). Respondent-father timely appealed.

---

[2] Although DSS also filed to terminate respondent-mother's parental rights, she is not a party to this appeal. In November 2019, DSS dismissed the TPR motion as to respondent-mother after she relinquished her parental rights.

## II. Analysis

On appeal, respondent-father challenges the trial court's adjudication of the existence of grounds to terminate his parental rights in Michael, Monica, and Maxine.

> When reviewing the trial court's adjudication of grounds for termination, we examine whether the court's findings of fact are supported by clear, cogent and convincing evidence and whether the findings support the conclusions of law. Any unchallenged findings are deemed supported by competent evidence and are binding on appeal. The trial court's conclusions of law are reviewed de novo.

*In re Z.G.J.*, 378 N.C. 500, 2021-NCSC-102, ¶ 24 (cleaned up). "[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. 388, 395 (2019).

A trial court may terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)(3) when:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C.G.S. § 7B-1111(a)(3) (2021). Regarding this ground for termination, this Court has held:

> The cost of care refers to the amount it costs the

Department of Social Services to care for the child, namely, foster care. A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay.

*In re J.M.*, 373 N.C. 352, 357 (2020) (cleaned up).

¶ 12     In the present case, the trial court made the following pertinent findings of fact in support of its conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(3) to terminate respondent-father's parental rights:

> 65. The six-month period immediately preceding the filing of the motion to terminate parental rights was January 17, 2019 to July 17, 2019.
>
> 66. The juveniles were in a foster care placement in the relevant six-month period.
>
> 67. The room and board and child-care costs for each of the juveniles exceeded $14,000 during the six-month period.
>
> 68. The father was in prison until mid-February 2019. He returned to jail in June 2019.
>
> 69. The father was employed while he was out of prison during the relevant six-month period. He earned about $8 per hour and $250 per week.
>
> 70. The father did not make any child support payments or provide financial support for the children between January 17, 2019 and July 17, 2019.
>
> 71. The father did not make any child support payments or provide financial support for the children at any time after the filing of the underlying juvenile petitions.
>
> . . . .
>
> 73. The father had the ability to pay more than zero dollars

> in child support or financial support of the children to
> contribute to their cost of care in the six-month period
> immediately preceding the filing of the juvenile petitions.
>
> 74. The father paid for a birthday party at Chuck E. Cheese
> to celebrate [Monica]'s birthday in June 2019. He brought
> toys for all of the juveniles. He brought shoes and clothing
> for all of the juveniles.

¶ 13    Respondent-father challenges findings of fact 70 and 71, arguing that the trial court's findings that he did not provide any financial support after the underlying juvenile petitions were filed or during the relevant six-month period are not supported by the evidence. Specifically, respondent-father directs our attention to finding of fact 74 and undisputed testimony demonstrating that he paid for lunch for his children during a visitation, provided gifts, shoes, and clothes for his children on more than one occasion, and paid for Monica's birthday party at Chuck E. Cheese in June 2019. Additionally, respondent-father argues that because he provided some of this support during the relevant six-month period, the trial court was required to make a finding that he "was able to pay more than he did, not just more than zero." We are not persuaded.

¶ 14    This Court's recent holding in *In re D.C.*, 378 N.C. 556, 2021-NCSC-104, is instructive on this issue. There, the trial court made unchallenged findings that the respondents were physically able to work, started a small business during the relevant six-month period, and reported that the business earned enough income to support themselves and their children. *Id.* ¶¶ 15–16. Although the trial court found

that the respondents "provided the juvenile with "some food and gifts at visitation" and also gave the juvenile "some small amount of spending money," the court also found that they did not pay any child support or give DSS or the foster parents any money that would cover a reasonable portion of the cost of care for the juvenile. *Id.* ¶ 15. On appeal, this Court affirmed termination of the respondents' parental rights under N.C.G.S. § 7B-1111(a)(3) because "[t]he trial court's unchallenged findings of fact demonstrate[d] that respondents had the ability to pay a reasonable portion of [the juvenile]'s cost of care *but failed to pay any amount to DSS or the foster parents toward cost of care.*" *Id.* ¶ 20 (emphasis added).

¶ 15 Here, there is similar uncontested evidence that respondent-father provided lunch, gifts, and clothing for the children and paid for Monica's birthday party in June 2019. But as in *In re D.C.*, this sporadic provision of gifts, food, and clothing does not preclude a finding by the trial court that respondent-father failed to provide a reasonable portion of the cost of care for the children when he made no payments to DSS or the foster parents during the relevant six-month period.

¶ 16 As noted above, "cost of care" under N.C.G.S. § 7B-1111(a)(3) contemplates the monetary cost of foster care that DSS is required to pay for the care of the children. *E.g.*, *In re Montgomery*, 311 N.C. 101, 113 (1984). Here, it is undisputed that the cost of care for each child during the determinative six-month period was in excess of $14,000. Unchallenged findings establish that respondent-father was employed and

earning about $250 per week while he was out of prison during the relevant six-month period, such that he could have provided some amount of support payments during this time. As in *In re D.C.*, the findings and evidence here "demonstrate that respondent[ ] had the ability to pay a reasonable portion of [the juveniles]' cost of care but failed to pay any amount to DSS or the foster parents toward cost of care." *In re D.C.,* ¶ 20. Respondent-father's failure to contribute any payments supports the trial court's challenged findings of fact. In turn, these findings support the trial court's conclusion that grounds existed under N.C.G.S. § 7B-1111(a)(3) to terminate respondent-father's parental rights.

Because a finding of a single statutory ground is sufficient to support termination of respondent-father's parental rights, we decline to address his arguments challenging the trial court's adjudication of other grounds under N.C.G.S. §§ 7B-1111(a)(1) and 7B-1111(a)(2). *In re E.H.P.*, 372 N.C. at 395. Respondent-father does not challenge the trial court's dispositional determination that it was in the best interests of Michael, Monica, and Maxine to terminate his parental rights. *See* N.C.G.S. § 7B-1110(a). Accordingly, the trial court's order is affirmed.

AFFIRMED.