IN THE SUPREME COURT OF NORTH CAROLINA

No. 194A23

Filed 22 March 2024

IN THE MATTER OF: A.H.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 289 N.C. App. 501 (2023), reversing orders entered on 20 and 24 May 2022 by Judge Thomas B. Langan in District Court, Stokes County. Heard in the Supreme Court on 20 February 2024.

> *Anné C. Wright for petitioner-appellant Stokes County Department of Social Services.*
>
> *James N. Freeman Jr. for appellant Guardian ad Litem.*
>
> *Mercedes O. Chut for respondent-appellee father.*

PER CURIAM.

Justice RIGGS did not participate in the consideration or decision of this case. As to the trial court's adjudication of neglect, the decision of the Court of Appeals is reversed for the reasons stated in the dissenting opinion.

As to the trial court's adjudication of dependency, the remaining members of the Court are equally divided, with three members voting to affirm and three members voting to reverse the decision of the Court of Appeals. Accordingly, the decision of the Court of Appeals as to dependency is left undisturbed and stands without precedential value. *See Batson v. Coastal Res. Comm'n*, 385 N.C. 328 (2023)

-1-

(per curiam) (affirming by an equally divided vote a Court of Appeals decision without precedential value). This matter is remanded to the Court of Appeals for further remand to the trial court for proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Justice EARLS dissenting.

North Carolina's general statutes set out seven criteria for determining that a child is a neglected juvenile. N.C.G.S. § 7B-101(15) (2023). This Court's cases establish that there must be "clear, cogent, and convincing evidence" of neglect to support an adjudication that a child is neglected. *See In re K.N.*, 373 N.C. 274, 278 (2020). The criteria for determining neglect are intended by the General Assembly "[t]o provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents." N.C.G.S. § 7B-100(4) (2023). But those criteria are not intended to empower trial courts to punish a parent they consider uncooperative or to remove a child from a home based on the court's own views of good parenting.

Several of the trial court's findings of fact in this case were not supported by clear, cogent, and convincing evidence. The remaining factual findings centered on a single incident and the interactions of the juvenile's parent and her caregiver with social workers. Those remaining findings do not support the adjudication that the child in this case was neglected by her father. I would affirm the decision of the Court of Appeals reversing the trial court's adjudication order and resulting disposition order.

## I.    Factual Background

IN RE A.H.

*Earls, J., dissenting.*

This is respondent-father's appeal from an adjudication order dated 20 May 2022 and a disposition order dated 24 May 2022 adjudicating his daughter A.H. (Aerin)[1] neglected and dependent and placing Aerin in the custody of petitioner, Stokes County Department of Social Services (DSS). Aerin was born on 12 April 2012 and was nine years old at the time of the 4 October 2021 incident that led to the orders appealed here. Aerin's biological mother relinquished her parental rights on 15 December 2021 and is not a party to this appeal.

The record indicates that on 27 May 2021, a temporary custody order giving custody of Aerin to respondent-father was entered by the Forsyth County District Court when Aerin was residing with her mother in Forsyth County. The findings supporting that order detail unfit living conditions that Aerin was subjected to in her mother's home. The trial court on that date found

> that with [respondent-father] the minor child has her own room, a quiet and safe living environment; that to provide the same for the minor child, [her father] rented and moved into a second apartment across the street from [his wife/Aerin's stepmother] and his six other children; that the minor child's home, hygiene, clothing are all suitable and safe and [DSS caseworker] has seen and has no concerns with the same; that the minor child is presently remote learning in third grade, has an IEP and is doing well; that [her father and stepmother] are aware of and taking care of the minor child's medical and dental care and the minor child does not have any significant health issues.

---

[1] A pseudonym used to protect the privacy and identity of the minor child and for ease of reading. *See* N.C. R. App. P. 42(b).

IN RE A.H.

*Earls, J., dissenting.*

The Forsyth County order also provided that respondent-father, who was the plaintiff in that case, "shall have legal and primary physical custody of the minor child, pending review of this matter before the undersigned on December 15, 2021." At the time this order was entered, respondent-father was living in Mt. Airy, North Carolina. However, before the Forsyth County court could review the temporary custody order, DSS became involved with the family due to an incident on 4 October 2021.

On 4 October 2021, Aerin was living with her father, stepmother, and her stepmother's four other children in Stokes County and attending King Elementary School. That day Aerin rode the school bus home with two of the other children in the home, and all three of them were met at the bus stop by respondent-father driving a truck with a work trailer attached. While still in the truck, respondent-father received a telephone call from Aerin's teacher, who mentioned that the family was now all living together in their new house.[2] When the call ended, respondent-father

---

[2] This account is taken from the trial court's findings of fact based on Aerin's testimony. In Finding of Fact 38 the trial court states that it finds Aerin's testimony credible and "adopts the events and chronology set out" in her testimony as the court's findings. Respondent-father gave a different account of the telephone call and the conversation with his daughter in his testimony, but, as the majority in the Court of Appeals noted, the trial court's findings appeared to credit respondent-father's testimony at some points despite also making a finding that "[t]he court does not find [respondent-father] to be credible." The challenge this creates for appellate review is why, as we recently explained, "the better practice always will be to make specific, express findings in the written order about what the trial court determined the facts to be, rather than referencing evidence in the record and stating that the referenced evidence is credible" or, as in this case, not credible. *In re H.B.*, 384 N.C. 484, 490–91 (2023).

"told [Aerin] he was tired of her telling other people their business. He stated to [Aerin] that he was going to whoop her."

At this point Aerin got out of the truck and started walking away. Respondent-father told her to get back into the truck but she refused. He followed her in the truck but could not keep up with her because he could not maneuver the truck in the neighborhood's cul-de-sacs. Respondent-father then got out of his truck, again ordered Aerin to get in the truck, and started chasing her. Aerin began running and darted into the road, where she was nearly hit by a dump truck that honked at her. There was conflicting testimony about what respondent-father saw and why he turned around and got back into his truck. The trial court's uncontested finding was that "[t]he black man turned and walked away before the child was directly in front of the dump truck."

A neighbor, also returning home from picking up children from school, was directly behind the dump truck and saw Aerin run into the road. He followed Aerin walking down the road for approximately 200–300 feet until he pulled off the road into the parking lot of a business. He found that Aerin was "hysterical, crying and screaming" and initially too upset to speak. Eventually when he calmed her down, she said she was afraid of her father and that he would beat her. The neighbor called law enforcement and waited with Aerin until they arrived.

It appears that the trial court credited respondent-father's testimony in finding

that he drove from the scene of the incident and took the other two children in the truck to a convenience store. The trial court found that

> there was a substantial risk to the juvenile of serious physical injury, when the father turned around, walked away, and left the child on a busy roadway on 10/4/2021. [Respondent-father] did not provide proper care of his child, when he left her running into a busy roadway . . . .

Aerin's stepmother admitted in her testimony that she did not cooperate with the DSS caseworker who came to the home the afternoon of 4 October 2021. The trial court found that "[n]o respondent was able to make a proper plan for [Aerin] on 10/4/2021. Her father . . . left and did not return to the scene. [Her stepmother] did not offer to make a plan for the child . . . ." Less than 24 hours after the incident, DSS filed a juvenile petition alleging that Aerin was an abused, neglected, and dependent juvenile.

## II.    Proceedings Below

The DSS petition was heard at the 23 February 2022 session of Stokes County Juvenile Court at which time the trial court took evidence and heard arguments of counsel for all parties. The trial court ultimately concluded that Aerin was neglected and dependent and dismissed the allegation of abuse. Respondent-father appealed, challenging several of the trial court's findings as unsupported by the evidence and inadequate to support the conclusion that Aerin was neglected or dependent. *See In re A.H.*, 289 N.C. App. 501, 502, 505 (2023).

Both the majority and the dissenting judges in the Court of Appeals agreed

that the trial court's Findings of Fact 33, 39 through 42, 44, and 45 are unsupported by the evidence. *Id.* at 505, 511. They further agreed that the remaining findings of fact are proper and supported by the evidence. *Id.* The dissenting judge disagreed with the majority on the question of whether the remaining findings of fact were sufficient to support the trial court's ultimate conclusions that Aerin was a neglected and dependent juvenile. *Id.* at 510, 524.

Because the decision of the Court of Appeals to reverse the finding of dependency is left undisturbed by this Court's decision, the only issue here is whether, disregarding the unsupported findings, the findings of fact by the trial court that were supported by competent evidence are adequate to support the finding of neglect. *See In re A.J.L.H.*, 384 N.C. 45, 53 (2023) (explaining that in an appeal from a neglect adjudication, a reviewing court examines "whether the trial court's conclusions of law are supported by adequate findings and whether those findings, in turn, are supported by clear, cogent, and convincing evidence") (citing *In re E.H.P.,* 372 N.C. 388, 392 (2019)); *see also In re A.C.*, 378 N.C. 377, 394 (2021) (discussing that when a finding lacks sufficient evidentiary support, it must be disregarded and the court must determine whether the remaining findings support the trial court's adjudication).

### III. Findings of Fact Supporting the Conclusion of Neglect

The Court of Appeals majority applied the correct standard of review in this case. Findings supported by clear, cogent, and convincing evidence are conclusive and

binding on appeal, even when there is contrary evidence in the record. *In re A.E.*, 379 N.C. 177, 184 (2021). Conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019). We therefore review de novo whether the trial court's legal conclusion that Aerin was a neglected juvenile is supported by the remaining findings of fact.

This is distinct from the contention in the Court of Appeals dissent that our task is to "consider the totality of the evidence to determine whether the trial court's findings sufficiently support its ultimate conclusion that [Aerin] is a neglected juvenile." *In re A.H.*, 289 N.C. App. at 519 (Flood, J., dissenting) (alteration in original) (*quoting In re F.S.*, 268 N.C. App. 34, 43 (2019)). This Court's precedents hold that appellate courts may not reweigh the underlying evidence to make factual assessments that are not made by the trial court. *See In re C.C.G.*, 380 N.C. 23, 33 (2022) (citing *In re J.A.M.*, 372 N.C. 1, 11 (2019)). The language in *In re F.S.* relied upon by the dissent below is not based on any applicable precedent from this Court and implies a "totality of the evidence" standard of review that we have not previously applied in these circumstances. *See, e.g., In re H.B.*, 384 N.C. 484, 492–93 (2023) (stating that the trial court is "the sole judge of the credibility and weight to be given to the evidence" (quoting *In re N.P.*, 374 N.C. 61, 65 (2020))). We review the evidence to determine if the trial court's findings of fact are supported, but we do not make or rely on our own findings of fact.

Under the law of this state, a neglected juvenile is one:

> [W]hose parent, guardian, custodian, or caretaker does any

of the following:

a. Does not provide proper care, supervision, or discipline.

b. Has abandoned the juvenile, except where that juvenile is a safely surrendered infant as defined in this Subchapter.

c. Has not provided or arranged for the provision of necessary medical or remedial care.

d. Or whose parent, guardian, or custodian has refused to follow the recommendations of the Juvenile and Family Team made pursuant to Article 27A of this Chapter.

e. Creates or allows to be created a living environment that is injurious to the juvenile's welfare.

f. Has participated or attempted to participate in the unlawful transfer of custody of the juvenile under G.S.14-321.2.

g. Has placed the juvenile for care or adoption in violation of law.

N.C.G.S. § 7B-101(15).

Remembering that the purpose of this section is simultaneously to provide services to protect juveniles, to respect the right to family autonomy and to prevent the "unnecessary or inappropriate separation of juveniles from their parents," N.C.G.S. § 7B-100(3), (4), it is axiomatic that neglect is something more than a single act of bad judgment by a parent or caregiver that results in no significant harm to a child. *See In re Stumbo*, 357 N.C. 279, 283 (2003). Under our cases interpreting this statute, a finding that a juvenile is neglected requires that the "conduct at issue constituted either severe or dangerous conduct or a pattern of conduct either causing

injury or potentially causing injury to the juvenile." *Id.* That precedent remains good law. And for good reason. As this Court explained, to hold that every act of negligence constitutes neglect

> would subject every misstep by a care giver to the full impact of subchapter I of chapter 7B of the North Carolina General Statutes, resulting in mandatory investigations, and the potential for petitions for removal of the child or children from their family for custodial purposes, and/or ultimate termination of parental rights.

*In re Stumbo*, 357 N.C. at 283 (cleaned up).

While a single act of negligence severe enough to cause significant harm to a child and indicative of the likelihood that future harm would result can constitute neglect, it is not the case that any "treatment of a child which falls below the normative standards imposed upon parents by our society" is sufficient to justify a finding that the child is neglected. *See In re V.M.*, 273 N.C. App. 294, 297 (2020).

Both *In re Stumbo* and *In re V.M.* involve children who arguably were subjected to negligent parenting, just as Aerin arguably was on 4 October 2021, but who were not neglected juveniles within the meaning of the statute. In *In re Stumbo*, a two-year-old child was reportedly playing naked and unsupervised in the driveway of his home. *In re Stumbo*, 357 N.C. at 280. When social workers came to the home to investigate the report, the parents were uncooperative. *Id.* In interpreting the statutory definition of neglect, this Court explained that

It is obvious from this definition and the cases applying it

> that the circumstances constituting neglect involve serious and substantial allegations. 'Neglect' is further linked with 'abuse' and 'dependency,' thereby reinforcing the legislative conclusion that these are conditions that pose a serious threat to a juvenile's welfare.

*Id.* at 287.

In *In re V.M.*, cited by the dissent below, the Court of Appeals reversed a trial court's finding of neglect where a four-month-old child suffered acute alcohol intoxication after being fed formula prepared with liquor that had been poured into water bottles after a funeral. 273 N.C. App. at 295. Upon de novo review, the Court of Appeals concluded that the trial court's findings of fact did not support the legal conclusion that the child was a neglected juvenile. *Id.*

These and other cases make clear that isolated incidents of neglect, even if the potential for serious injury is present, do not meet the statutory threshold for a finding of neglect. *See, e.g., In re H.P.*, 278 N.C. App. 195 (2021) (holding that findings that a three-year-old child was running naked between parents' homes and was walking alone did not constitute a neglected juvenile).

As the majority below correctly concluded after reviewing all the trial court's competent and supported findings of fact, this case presents a single incident in which a nine-year-old child walked away from her father, refused to follow his directions to return, and ran from him as he followed her in his truck with two other children. When he could not effectively navigate the neighborhood streets, he got out of the truck and pursued her on foot. Before Aerin crossed the busy road, he had already

turned around to return to the other two children. *See In re A.H.*, 289 N.C. App. at 507. At this point he had a Sophie's choice—he could expose the nine-year-old to danger by allowing her to continue unsupervised as she ran away from him, or he could expose the children in the truck to danger by leaving them alone to pursue the nine-year-old. Perhaps in hindsight he made the wrong choice, but there is no evidence that it was a neglectful one.

The dissent below found support for the conclusion that Aerin was neglected based on the finding that respondent-father "left the scene of the incident and did not return nor inquire about his child." As the majority explained, the trial court's finding here is simply devoid of sufficient information to establish neglect. *Id.* at 508–09. There was no finding of fact regarding whether respondent-father knew who to contact or how. As the majority below recounted:

> What evidence was introduced shows that [the DSS caseworker] received a report at 3:15 p.m., arrived at Newsome Road around 4:00 p.m., began her home inspection between 5:30 and 5:45 p.m., executed her verified petition before a magistrate later that evening, and filed the petition the following day. Again, the absence of evidence is not evidence, and DSS failed to meet its burden of introducing evidence proving Father's failure to contact DSS after business hours on the 4th and on the morning of the 5th before the filing of the petition amounted to neglect, particularly when the only evidence that was introduced— credible or not—shows Father knew that his wife had already met with DSS and that Aerin was safe in DSS custody.

*Id.* at 509 (cleaned up).

IN RE A.H.

*Earls, J., dissenting.*

It is not our role to make findings of fact from the evidence. Just as we are bound by the competent findings of fact that the trial court did make, we are forbidden to infer factual findings that it did not.

At the end of the day, the issue here is not whether we approve of respondent-father's parenting decisions on 4 October 2021. The question is whether the trial court's findings of fact that were supported by clear, cogent, and convincing evidence in the case are sufficient to meet the statutory criteria to find that a child is a neglected juvenile. The findings of fact in this case do not rise to that level. This Court's failure to enforce the statute as written, and to follow our precedents, frustrates the purposes of the General Assembly to protect family integrity, to provide children with safety, continuity, and permanence, and to prevent the unnecessary separation of children from their parents. The decision of the Court of Appeals should be affirmed.