An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-73

Filed 15 October 2025

Gaston County, No. 21JT000114-350

IN THE MATTER OF: M.S.R.

Appeal by respondent-mother from order entered 6 September 2024 by Judge William A. Anthony in District Court, Gaston County. Heard in the Court of Appeals 23 September 2025.

> *J. Edward Yeager, Jr. for petitioner-appellee Gaston County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by Andrew P. Tabeling and Stephen V. Carey, for guardian ad litem.*
>
> *Mercedes O. Chut for respondent-appellant mother.*

STROUD, Judge.

Respondent Mother appeals from the trial court's order terminating her parental rights under North Carolina General Statute Sections 7B-1111(a)(1) for neglect, (a)(2) for willful failure to make reasonable progress under her case plan, and (a)(9) for lack of ability or willingness to provide a safe home. Mother argues that the evidence was insufficient to support termination under any of these grounds. We

disagree. Because the trial court properly terminated Mother's parental rights under Section 7B-1111(a)(1), we affirm.

## I.    Background

In December 2020, Mother gave birth prematurely to Mike.[1]  At Mike's birth, Mother tested positive for "marijuana and cocaine."  Mike's condition deteriorated rapidly—within two days, doctors had transferred him to Levine Children's Hospital because of "his worsening medical condition."  There, doctors diagnosed him with necrotizing enterocolitis, a condition "common to infants . . . exposed to cocaine in utero."  Mike experienced "withdrawal symptoms," "required a feeding tube," and exhibited "jittery" behavior with "heightened startled responses."

The Gaston County Department of Health and Human Services (GCDHHS) became "involved soon after" Mike's birth.  After his hospital discharge, GCDHHS approved Mike's temporary safety placement with his paternal aunt and her husband.  By February 2021—less than two months later—GCDHHS had begun providing in-home services to both parents.  Around 4 March 2021, Mother and father attended a "child and family meeting" and entered a case plan to address "mental health, substance abuse[,] and parenting."

But those early intervention efforts failed.  On 27 May 2021, GCDHHS filed a juvenile petition alleging that Mike was neglected and dependent.  The petition

---

[1] A pseudonym is used to protect the minor child's identity.

recounted Mother's circumstances in detail. Although Mother had received several diagnoses—"schizophrenia"; "bipolar disorder"; "post-traumatic stress disorder"; and "alcohol," "cannabis," and "cocaine abuse"—she did not take medicine to "manag[e] her mental health conditions." GCDHHS also described Mother's "volatile relationship" with father and her "extensive history of involvement with the department of social services." The petition noted that Mother's "compliance with drug treatment" was "inconsistent": She failed to appear for multiple GCDHHS-requested drug screenings and, when she did submit to testing, tested positive for methamphetamine, benzodiazepine, and cocaine.

Mike entered GCDHHS's nonsecure custody that same day. The trial court later conducted adjudicatory and dispositional hearings. On 15 June 2021, the court entered an order adjudicating Mike as a neglected and dependent juvenile based on the parties' stipulations. And on 6 July 2021, the court entered its dispositional order, concluding that Mike's "best interest" required that he "remain[ ] in the physical and legal custody of [GCDHHS] and that [GCDHHS] ha[ve] placement responsibility."

The court's order made clear that if Mother and father "desire[d] to regain custody," they must "follow through with [GCDHHS's] recommended case plan." The case plan—which the court adopted and incorporated into its findings of fact—required Mother to complete various tasks designed to "correct the conditions that led to" Mike's removal. Those requirements included, in part: (1) completing substance abuse and mental health assessments and complying with all

recommendations; (2) attending domestic violence classes; (3) submitting to random drug testing with negative results; (4) completing parenting classes; (5) maintaining weekly contact with GCDHHS; (6) securing "appropriate, safe, [and] stable" housing; (7) obtaining employment; (8) visiting Mike consistently; (9) refraining from criminal activity; (10) attending Mike's medical appointments; and (11) contributing to his welfare while in GCDHHS's custody.

The court conducted a series of review and permanency planning hearings over the next two years. During this period, Mother made little consistent progress toward completing her case plan requirements.

On 22 September 2023, GCDHHS petitioned to terminate Mother's parental rights under North Carolina General Statute Sections 7B-1111(a)(1), (a)(2), and (a)(9). The trial court held a hearing on the petition in June 2024. Mother failed to appear. GCDHHS presented testimony from three witnesses: a Phoenix Counseling (Phoenix) representative;[2] a MedScreen representative who handled Mother's drug screenings; and the family's social worker.

On 6 September 2024, the court entered an order terminating Mother's parental rights.[3] The court found a likelihood of "repetition of neglect" because

---

[2] Mother completed a comprehensive clinical assessment at Phoenix on 18 June 2021. The assessment resulted in seven diagnoses: (1) alcohol abuse disorder, (2) heroin use disorder (in remission), (3) schizophrenia, (4) post-traumatic stress disorder, (5) generalized anxiety, (6) cocaine dependency, and (7) marijuana dependency. Phoenix recommended that Mother complete "Substance Abuse Comprehensive Treatment" for five days a week, four hours per day, for up to twelve weeks.

[3] Although the trial court also terminated Mike's father's parental rights, he is not a party to this appeal.

Mother had "not remedied the conditions that brought" Mike into GCDHHS's custody. Specifically, the court emphasized that Mother had not "successfully engaged" in mental health or substance abuse treatment, "demonstrated sobriety," "obtained appropriate housing or income," or "made efforts to eliminate domestic violence from the home." Based on these findings, the court concluded that grounds existed under North Carolina General Statute Sections 7B-1111(a)(1), (a)(2), and (a)(9) to terminate Mother's parental rights to Mike. The court also determined that termination served Mike's "best interest." Mother timely appealed.

## II.    Discussion

Mother argues that the trial court erred in terminating her parental rights under all three grounds in North Carolina General Statute Section 7B-1111(a). In doing so, she challenges findings of fact 53–57, 60–66, 69, 76–85, 89, and 95 as unsupported by the evidence. We need not reach those challenges. The unchallenged findings alone support the trial court's conclusion that Mike is neglected under North Carolina General Statute Section 7B-1111(a)(1). Because "we review only those findings needed to sustain the trial court's adjudication," we decline to examine Mother's challenges. *In re J.S.*, 374 N.C. 811, 814, 845 S.E.2d 66, 71 (2020).

## A. Standard of Review

"When considering a petition to terminate parental rights," the trial court must first determine whether the alleged "grounds for termination" exist. *In re G.B.*, 377 N.C. 106, 111, 856 S.E.2d 510, 514 (2021). At the adjudicatory stage, the petitioner

must prove by "clear, cogent, and convincing evidence" at least one ground for termination under North Carolina General Statute Section 7B-1111(a). *Id.* (quoting *In re A.U.D.*, 373 N.C. 3, 5, 832 S.E.2d 698, 700 (2019)).

We review a trial court's adjudication of grounds to terminate a parent's rights "to determine whether the findings are supported by clear, cogent[,] and convincing evidence and the findings support the conclusions of law." *Id.* (quoting *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019)). Unchallenged findings of fact "are binding on appeal," and we review conclusions of law *de novo*. *Id.* (citation omitted).

## B. Termination of Parental Rights Based on Neglect

Mother contends that her "substance abuse during her pregnancy" was "the sole reason" for Mike's removal. The hearing evidence, she says, "did not explain how [her] substance abuse affected her ability to care" for Mike "at the time of the termination hearing." So Mother claims that we should reverse the trial court's termination of her parental rights for neglect. We disagree.

A trial court may terminate parental rights for neglect if the parent has neglected the juvenile under North Carolina General Statute Section 7B-101. N.C. Gen. Stat. § 7B-1111(a)(1) (2023). A neglected juvenile includes one "whose parent, guardian, custodian, or caretaker does . . . not provide proper care, supervision, or discipline" or who "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2023).

And timing matters. To terminate parental rights, the petitioner must show

"neglect at the time of the termination hearing." *In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713-15, 319 S.E.2d 227, 231-32 (1984)). When "the child has been separated from the parent for a long period of time," as Mike was here, the petitioner must prove both "past neglect" and "a likelihood of future neglect by the parent." *Id.* The trial court must consider "evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing" when deciding whether future neglect is likely. *In re Z.V.A.*, 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citation omitted). And critically, a "parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.S.E.*, 378 N.C. 40, 48, 859 S.E.2d 196, 205 (2021) (quoting *In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916 (2020)).

Here, the trial court made extensive findings of fact based on substantial evidence presented during the June 2024 hearing. GCDHHS presented testimony from three witnesses—a Phoenix representative, a MedScreen representative who handled Mother's drug screenings, and the family's social worker—along with the comprehensive record from over two years of review and permanency planning hearings. From this evidence, the court made dozens of detailed findings about Mother's compliance—or lack thereof—with her case plan requirements over more than three years.

Mike's past neglect is undisputed. That is, Mother does not contest Mike's previous neglect adjudication. We turn, then, to assess whether the unchallenged

findings support the trial court's conclusion that Mother would likely neglect Mike in the future. *See In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167.

The trial court found that after Mike had entered GCDHHS's custody, Mother "voluntarily entered into a case plan" in July 2021. This plan outlined several requirements for reunification, which included:

> a) Complete a substance abuse assessment and comply with all recommendations. Sign all necessary releases for the social worker to be able to monitor her progress in the program;
>
> b) Complete a mental health assessment and comply with all recommendations. If placed on medication(s), she will take them as prescribed. Sign all necessary releases for the social worker to be able to monitor her progress in the program;
>
> c) Attend classes to address . . . victims of domestic violence;
>
> d) Submit to random drug screens and provide negative results;
>
> e) Attend and actively participate in an approved parenting class and demonstrate knowledge learned from these classes. Sign all necessary releases for the social worker;
>
> f) Maintain contact with [GCDHHS] on a weekly basis. Contact the social worker at least once a week or sooner if she is having difficulty with the case plan. . . .;
>
> g) Maintain an appropriate, safe, stable living environment for herself and [Mike]. She will allow [GCDHHS] to assess the home in order to assure the home is stable and safe. . . .;
>
> h) Obtain and maintain employment. She is to have sufficient, legal, stable employment, or other legal source

of income to meet the basic needs of the juvenile;

i) Exercise consistent visitation with the juvenile;

j) Refrain from criminal activity and not violate any laws;

k) Attend all medical appointments for [Mike], as able; [and]

l) Contribute to the welfare of [Mike] while in custody[.]

The trial court's findings tracked Mother's progress over nearly three years. After "regularly review[ing] [Mother's] progress toward regaining custody," the court could "not conclude[ ] that [Mother] ha[d] made reasonable progress to warrant returning" Mike to her custody. The evidence showed why. Mother had "failed to correct the conditions that led to the removal of [Mike] from her custody, such that neglect would continue if [he] were returned to [her] care."

Mother's drug screenings indicated that she had made little if any progress in resolving her drug abuse. According to the trial court's unchallenged findings, Mother "complied with" only four out of twenty-eight "drug screens requested by [GCDHHS] or ordered by the [c]ourt." Each test "produced a result positive for use of illegal or controlled substances to include cocaine and/or marijuana." When Phoenix tested her in July 2022, "the result . . . was positive for use of cocaine, marijuana[,] and alcohol." Phoenix later discharged Mother "unsuccessfully" and "recommend[ed] that [Mother] seek a higher level of care" because she had a "drug screen positive for illegal or controlled substances within five . . . days of leaving detox."

Still more, the trial court found that Mother had "failed to successfully complete any substance abuse or mental health treatment program" since Mike entered GCDHHS's custody. And she "failed to demonstrate sobriety by consistently complying with random drug screens." On top of that, the unchallenged findings note that Mother's parental rights to five other children had been "terminated involuntarily . . . due to a history of substance abuse and domestic violence in the home"—and the "conditions that result[ed] in the termination of [Mother's] parental rights" to those children "continue[d] to exist."

Her visitation record provided more evidence. Mother, the trial court found, attended only "eighteen . . . out of thirty . . . offered visitations"—just fifty-six percent. And by the 4 April 2024 hearing, she had not visited Mike since 22 May 2023, "a period of greater than twelve . . . months."

These unchallenged findings "are deemed supported by competent evidence and are binding on appeal." *In re S.R.F.*, 376 N.C. 647, 651, 853 S.E.2d 415, 419 (2021) (citation omitted). Based on these findings, the trial court concluded that Mother "neglected the juvenile within the meaning of [North Carolina General Statute Sections] 7B-101(15) and 7B-1111(a)(1)" and that termination was "in the best interest of [Mike]."

We now consider whether the supported findings "support the conclusions of law." *In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52 (citation omitted). We hold that they do.

The trial court's conclusion follows directly from the evidence. A "parent's failure to make progress in completing a case plan," our courts have explained, "is indicative of a likelihood of future neglect." *In re M.S.E.*, 378 N.C. at 48, 859 S.E.2d at 205 (quoting *In re M.A.*, 374 N.C. at 870, 844 S.E.2d at 916). The trial court found that Mother made minimal progress over nearly three years. She failed to "[s]ubmit to random drug screens and provide negative results." She failed to "successfully complete any substance abuse or mental health treatment program[s]." And she failed to maintain consistent visitation—indeed, Mother had not seen Mike in over a year. *See In re D.L.A.D.*, 375 N.C. 565, 572, 849 S.E.2d 811, 817 (2020) (noting that "[a]n extended period in which a parent does not attempt to visit the child could show" a "future propensity to be inattentive to the child"). Further, the same conditions that cost Mother her parental rights to five other children persist today.

Again, Mother challenges none of these findings. Her argument boils down to this: Because substance abuse during her pregnancy triggered Mike's removal, no proof exists that she would neglect him now. But her argument ignores everything that happened after removal. The trial court gave Mother a roadmap to reunification through her case plan. Nearly three years later, she had failed at almost every turn. These unchallenged findings make clear that Mike faces "a likelihood of future neglect" if returned to Mother's care. *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167 (citing *In re Ballard*, 311 N.C. at 713-15, 319 S.E.2d at 231-32).

The trial court properly determined that grounds existed for termination under

North Carolina General Statute Section 7B-1111(a)(1). Because we so hold, we need not review Mother's challenged findings or her arguments about the trial court's additional grounds for termination. *In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019) ("[A] finding of only one ground is necessary to support a termination of parental rights[.]").

## III. Conclusion

The trial court's unchallenged findings support the trial court's conclusion of law that grounds existed for termination under North Carolina General Statute Section 7B-1111(a)(1). We therefore affirm.

AFFIRMED.

Judges COLLINS and GRIFFIN concur.

Report per Rule 30(e).