An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-541

Filed 18 February 2026

Randolph County, No. 22JT000239-750

IN THE MATTER OF: E.J.T.

Appeal by respondent-mother from order entered 19 February 2025 by Judge Robert M. Wilkins in District Court, Randolph County. Heard in the Court of Appeals 12 January 2026.

> *Chrystal Kay for petitioner-appellee Randolph County Department of Social Services.*
>
> *Parry Law, PLLC, by Neil A. Riemann, for Guardian Ad Litem.*
>
> *Jason Senges for respondent-appellant-mother.*

PER CURIAM.

Respondent Mother appeals from an order terminating her parental rights to her son, Ethan.[1] Mother's appellate counsel has filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. After careful review, we are unable to identify any error below. We affirm the trial court's order.

## I.    Factual and Procedural History

---

[1] A pseudonym is used.

Randolph County Department of Social Services (DSS) filed a juvenile petition on 30 December 2022 alleging that seven-year-old Ethan was a neglected juvenile. On 20 April 2023, Ethan was adjudicated neglected and placed in DSS's custody. At the disposition hearing and at subsequent permanent planning hearings, the trial court ordered Mother to complete certain activities to reunite with Ethan, who remained in DSS custody. The court-ordered activities included: completing and complying with the recommendations of a domestic violence support program, mental health assessment, and substance abuse assessment; refraining from abusing impairing substances and submitting to random drug screenings; and obtaining and maintaining stable income and a safe home. DSS filed a motion to terminate Mother's parental rights[2] on 30 April 2024; the trial court held a hearing on the motion on 2 October 2024. At that time, Mother was incarcerated but still attended the hearing.

In an order entered 19 February 2024, the court terminated Mother's parental rights. The court found that Mother did not complete or fully comply with substance abuse, mental health, or domestic violence treatment; had failed or refused to submit to drug screenings; and could not verify a source of income or stable housing. The court also found that Mother had consistently refused drug screenings since August 2022, but at the hearing she admitted for the first time to using methamphetamine from 2022 to 2024. And Mother, the court found, had not paid anything toward

---

[2] DSS also moved to terminate Ethan's father's parental rights. He is not a party to this appeal.

Ethan's support in the six months preceding DSS filing the motion. Based on these findings, the court terminated Mother's rights based on four grounds enumerated in North Carolina General Statute Section 7B-1111(a): subsection (a)(1) (neglect); subsection (a)(2) (willful abandonment); subsection (a)(3) (failure to pay support); and subsection (a)(6) (dependency).

The trial court then turned to Ethan's best interests. It found that Ethan, age nine at the time, had bonded with his foster parents, who hoped to adopt him. The court concluded that terminating Mother's parental rights was in Ethan's best interests.

Mother timely appealed.

## II.    Analysis

Mother's counsel has filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P. 3.1(e) ("When counsel for the appellant concludes that there is no issue of merit on which to base an argument for relief, counsel may file a no-merit brief. . . . In the no-merit brief, counsel must identify any issues in the record on appeal that arguably support the appeal and must state why those issues lack merit or would not alter the ultimate result."). Mother's counsel also informed Mother in writing of her right to file a *pro se* appellant brief and instructions on how to do so.

Mother's counsel identified three proposed issues for appellate review in her no-merit brief: (1) the trial court erred in finding a child support order existed without

the entry of a copy of the order as evidence; (2) the trial court erred in finding grounds existed to support the termination of Mother's parental rights under Section 7B-1111(a)(1), (2), and (6); and (3) the trial court erred in determining termination of Mother's parental rights was in Ethan's best interest. This Court independently reviews the issues raised in the no-merit brief. *In re L.E.M.*, 372 N.C. 396, 402, 831 S.E. 2d 341, 345 (2019).

There are two steps in a termination of parental rights proceeding: an adjudicatory stage and a disposition stage. *In re S.C.C.*, 379 N.C. 303, 308, 864 S.E.2d 521, 525 (2021). At the adjudicatory stage, "the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination [under North Carolina General Statute Section 7B-1111(a)] exists." *In re O.J.R.*, 239 N.C. App. 329, 332, 769 S.E.2d 631, 634 (2015) (citation omitted). If the court finds grounds to terminate parental rights under Section 7B-1111(a), "it proceeds to the dispositional stage where it must determine whether terminating the parent's rights is in the juvenile's best interest." *In re C.B.*, 375 N.C. 556, 559, 850 S.E.2d 324, 327 (2020) (citation and quotation marks omitted).

This Court reviews an adjudication under Section 7B-1111(a) "to determin[e] whether clear, cogent, and convincing evidence was presented to support the findings of fact, and whether the findings of fact support the conclusions of law," *In re O.J.R.*, 239 N.C. App. at 332, 769 S.E.2d at 634 (citation omitted). "[A]n adjudication of any single ground in [Section] 7B-1111(a) is sufficient to support a termination of parental

rights." *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 53 (2019) (citations omitted). We review the "trial court's determination of whether terminating the parent's rights is in the juvenile's best interest" for abuse of discretion, *In re Z.A.M.*, 374 N.C. 88, 99, 839 S.E.2d 792, 800 (2020) (citations and quotation marks omitted). Under that standard, "we defer to the trial court's decision unless it is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 100, 839 S.E.2d at 800.

## A. Adjudication

The trial court terminated Mother's parental rights based on four grounds in Section 7B-1111(a). Section 7B-1111(a)(3) provides for termination when clear, cogent, and convincing evidence shows that a parent of a juvenile in foster care "for a continuous period of six months immediately preceding the filing of the petition or motion[,] willfully failed to pay a reasonable portion of the cost of care for the juvenile" despite being "physically and financially able to do so." N.C. Gen. Stat. § 7B-1111(a)(3) (2023). It is well established that

> [a] parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay. Where a parent has the ability to pay some amount greater than zero but pays nothing, the parent has failed to pay a reasonable portion of the cost of care within the meaning of [Section] 7B-1111(a)(3).

*In re J.M.*, 377 N.C. 298, 308, 857 S.E.2d 119, 126 (2021) (citations and quotation marks omitted). "A finding that a parent has [the] ability to pay support is essential

to termination" under Section 7B-1111(a)(3). *In re Ballard*, 311 N.C. 708, 716-17, 319 S.E.2d 227, 233 (1984) (citation omitted).

Here, the trial court made these relevant findings of fact:

> 79. There is a child support order in place in regards [to] the minor child and . . . Mother.
>
> 80. . . . Mother has not paid anything towards the child support of the minor child for the last six months before the filing of the Motion to Terminate.
>
> 81. []DSS is not aware of nor has . . . Mother informed []DSS of any physical or mental disability that would prevent her from working and contributing a reasonable amount to the minor child's cost of care. . . . Mother even testified that the six months before the filing [of the] Motion to Terminate she was working.
>
> 82. . . . Mother had the ability to pa[y] something more than nothing towards the minor child's cost of care and . . . Mother paid nothing towards the minor child's cost of care.

Mother's counsel notes that no child support order was entered as evidence at trial, although Mother testified that she was subject to a child support order and she had even been arrested for it. Despite that testimony, DSS argues "there was not a child support or court order that ordered . . . Mother to pay the reasonable cost of care." The existence of a child support order matters because it would eliminate the trial court's requirement under Section 7B-1111(a)(3) to find that a parent has the ability to pay support. *See In re Roberson*, 97 N.C. App. 277, 281, 387 S.E.2d 668, 670 (1990) (finding that because "a proper decree for child support will be based on the supporting parent's ability to pay as well as the child's needs, there is no requirement

that petitioner independently prove or that the termination order find as fact respondent's ability to pay support during the relevant statutory time period (citation omitted)).

Mother testified at the termination hearing that she had worked from October 2023 to June 2024 and made approximately $500.00 a month. She admitted that she paid nothing toward Ethan's support during that time. But either way, if there was a child support order in existence as Mother testified, or there was not, the court's finding that Mother was able to pay some amount "more than nothing" for Ethan's support was supported by her own testimony that she was employed during the relevant six-month period. Entry of a support order was not necessary to establish Mother's ability to pay support.

We hold that the unchallenged findings of fact support the trial court's conclusion that Mother had the ability "to pay more than nothing" for Ethan's care and failed to pay anything in the relevant six-month window. Because termination of Mother's rights under Section 7B-1111(a)(3) was supported by clear, cogent, and convincing evidence, we need not review Mother's proposed challenges to the other three termination grounds. *In re E.H.P.*, 372 N.C. at 395, 831 S.E.2d at 53.

## B. Disposition

Mother's counsel's final proposed argument is that the trial court erred in finding that terminating her parental rights was in Ethan's best interests. A trial court must consider these factors in making that determination:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2023). The termination order included detailed findings on each dispositional factor. The court found that nine-year-old Ethan had bonded with his foster parents and had a "high likelihood" of being adopted. The court did not abuse its discretion in determining that terminating Mother's parental rights was in Ethan's best interests.

## III.    Conclusion

We affirm the termination order.

AFFIRMED.

Panel consisting of: STROUD, FLOOD, and STADING.

Report per Rule 30(e).